ALBERT BEDARD *vs.* MICHAEL P. MAHONEY.

MAY 24, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Suretyship.     Bonds to Release Attachment.     Change of Parties.*

A surety on a bond to release property attached in the hands of a garnishee is not discharged from liability thereon, by reason of changes made in parties defendant by leave of court; since the bond is subject to the provisions of law existing in reference to the conduct of the action, as determining the scope and effect of the obligation thereby assumed.

Since the law authorizes changes of parties to be made in an action in which a bond of this nature is given, without impairing the obligations of the bond, such obligations are entirely different from the ordinary obligations assumed by a surety.

DEBT ON BOND. Heard on agreed statement of facts.

BLODGETT, J. This is an action of debt on a bond given to discharge and release property attached by the process of garnishment, and has been certified to this court, under the provisions of section 477 of the Court and Practice Act, upon an agreed statement of facts, which reads as follows:

"And now come the parties in the above entitled action now pending in the Superior Court at issue on its merits, and in accordance with the provisions of Sec. 477 of the Court and Practice Act file and submit an Agreed Statement of Facts, as follows:

"(1) That Albert Bedard, by a writ of attachment dated July 16th, 1902, and returnable to the District Court of the Sixth Judicial District on the 24th day of July, 1902, commenced suit against John Daley, Daniel Daley, Arthur Daley, Frederick Daley and Walter Daley, a copartnership doing business as Daley Bros..

"(2) That the plaintiff in that action attached funds of the defendants in the hands and possession of the Park Coal Company, a corporation.

"(3) That on the 16th day of August, 1902, in order to discharge the aforesaid attachment, the defendants tendered and the plaintiff Bedard accepted a bond in terms as follows:

" 'KNOW ALL MEN BY THESE PRESENTS: That we, John Dailey, Daniel Dailey, Arthur Dailey, Frederick Dailey and Walter Dailey, as principals, and Michael P. Mahoney, as surety, are holden and stand firmly bounden and obliged unto Albert Bedard in the full and just sum of Three Hundred Dollars ($300) to the payment of which to the said Albert Bedard, his executors, administrators or assigns, we jointly and severally bind ourselves, our heirs, executors and administrators.

" 'The condition of this obligation is such that

" 'Whereas a writ of attachment did issue from the District Court of the Sixth Judicial District on the sixteenth day of

July, A. D. 1902, wherein Albert Bedard, of Providence, was named as plaintiff and John Daley, Daniel Daley, Arthur Daley, Frederick Daley and Walter Daley were named as defendants, which writ was returnable to the District Court of the Sixth Judicial District on the twenty-fourth day of July, A. D. 1902, and

" 'Whereas under said writ personal property was trusteed in the hands of the Park Coal Company, a corporation, as the personal property of the said defendants, and

" 'Whereas after such attachment and the return of said writ as aforesaid, the said Albert Bedard has upon tender and delivery to him of this bond, caused said attachment upon the property attached as the property of the defendants to be released.

" 'Now, therefore, if the final judgment in the action commenced by said writ shall be forthwith paid and satisfied after the rendition thereof (if said judgment shall be for the plaintiff and against the defendants) then this obligation shall be null and void; otherwise in full force and effect.

" 'In Witness Whereof we, the said John Dailey, Daniel Dailey, Arthur Dailey, Frederick Dailey and Walter Dailey, and Michael P. Mahoney, have hereunto set our hands and seals this 14th day of August, A. D. 1902.

" ' Signed, sealed    " 'MICHAEL P. MAHONEY   (Seal)
   and delivered in    " 'DANIEL A. DAILEY    "
    presence of:    " 'WALTER J. DAILEY    "
  ' " John McPherson.    " 'ARTHUR W. DAILEY    " .
              " 'JOHN A. DAILEY    "
              " 'FREDERICK J. DAILEY    "

" (4) That subsequent to the delivery of the aforesaid bond, on, to wit, the 18th day of September, 1902, the plaintiff in said action then pending in the Sixth District Court, on motion discontinued against all the defendants named in the original writ of July 16th, except John Daley.

" (5) That on September 25th, 1902, after trial, decision was entered for defendant John Daley.

" (6) That on February 3rd, 1903, after an appeal had been

taken from the aforesaid decision, on motion of plaintiff the court permitted him to amend his writ by adding the name of Daniel A. Dailey and making him a party defendant.

"(7)    That on April 20, 1904, the plaintiff, with consent of court, was permitted to amend his writ so that second line should read 'a copartnership doing business as John A. Dailey & Son,' and that thereupon on the same day (April 20, 1904) by submission of defendant, the plaintiff recovered against John Dailey and Daniel A. Dailey, a copartnership doing business as John A. Dailey & Son judgment and costs, in the sum of $186.69.

"(8)    That none of the alterations and amendments to the papers and change of parties in the original suit started by Albert Bedard by writ dated July 16, 1902, as had hereinbefore been set forth, were made with the knowledge or consent of Michael P. Mahoney, surety on the aforementioned bond given by the defendants to plaintiff to release his attachment.

"(9)    That the judgment recovered by the plaintiff Albert Bedard on April 20, 1904, as hereinbefore has been set forth, has remained unpaid and unsatisfied.

"(10)    That Albert Bedard, on the 18th of October, 1908, began his present action of debt on bond against Michael P. Mahoney, the surety named in the aforementioned bond, to recover the amount of his (the plaintiff's) aforementioned judgment.

"(11)    That the said Mahoney sets up in defense to said action of debt that he has been relieved from liability on said bond by reason of the amendments, alterations and change of parties as hereinbefore set forth, and that final judgment in the original suit was not, in accordance with terms of his said undertaking 'against the defendants' named in said original writ.

"Wherefore the parties hereto respectfully inquire if on the foregoing statement of facts Michael P. Mahoney is liable to the plaintiff for the amount of his judgment recovered against John Dailey and Daniel A. Dailey, copartnership doing business

as John A. Dailey & Son, by suit begun with the issuance of the writ of attachment dated July 16th, 1902."

The provision of the statute concerning the discharge of property attached on trustee process in force at the time the bond in question was given was section 23 of chapter 253, General Laws, 1896, as follows: "Whenever a writ shall command the attachment of the shares of the defendant in any corporation, or of his personal estate in the hands or possession of any person, copartnership, or corporation, as trustee, the defendant may, at any time after the service of such writ upon such trustee, and before final judgment or decree, deliver to the officer who served such writ, a bond, in the penal sum of the amount of damages laid in the writ, signed by the defendant or some one in his behalf, with surety or sureties to the satisfaction of such officer, with a condition therein that the same shall be null and void if the final judgment or decree in the action or cause in which such writ was served shall be forthwith paid and satisfied after the rendition thereof."

By the provisions of section 25 of said chapter, as amended by chapter 979, Public Laws, passed April 3, 1902, it was provided as follows: "In case such writ shall have been returned to the court to which it is made returnable, and duly entered therein, or in case the officer who served such writ shall, from any cause, be unable to accept such bond and release the shares or personal estate in the hands or possession of such trustee from such attachment, then the bond given to release the attachment shall be delivered to the plaintiff or his attorney named on said writ, such bond running to the plaintiff and, with surety to the satisfaction of the plaintiff or such attorney; and upon the acceptance of such bond by said plaintiff or such attorney, said plaintiff or his attorney shall thereupon give to said defendant a certificate signed by such plaintiff or his attorney that he has accepted said bond and released said shares or personal estate from attachment. In case of the refusal of said plaintiff or his attorney to act upon said bond or to receive a proper bond and give such certificate, said defendant may petition the court to which such writ is returnable to accept a

bond running to the plaintiff and satisfactory to the court, and release said shares or personal estate from attachment."

(1)    But the bond thus authorized and required to be given is subject to the provisions of law then existing in reference to the conduct of the action, as determining the scope and effect of the obligation thereby assumed. As said by Durfee, C. J., in *People's Savings Bank* v. *Tripp*, 13 R. I. 621, 622, "It is only when the contract precedes the law, that the law can impair its obligation; when the law comes first, it enters into the contract, modifying the obligation from the outset and therefore cannot impair it by simply being enforced."

Section 23 of chapter 233, General Laws of 1896, in force at the time of the execution of the bond in question, and later made section 243, Court and Practice Act, and still in force as section 23 of chapter 283, General Laws of 1909, is as follows: "No action shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added and summoned in and parties misjoined may be dropped, by order of the court at any stage of the cause, as justice may require, in the discretion of the court, and upon such terms as the court may order. When any action has been commenced in the name of the wrong party as plaintiff, the court, if satisfied that it has been so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, may allow any other party or parties to be substituted, or added, as plaintiff or plaintiffs."

Sec. 25 of cap. 233, General Laws of 1896, in force at the time of the execution of the bond in question, and later made Sec. 245, C. P. A., and still in force as Sec. 25 of cap. 283, General Laws of 1909, is as follows: "No change of parties made by order of the court shall impair any previous attachment of the estate, or arrest of the body, of any defendant remaining in the action, nor impair any bond or bail given by any party remaining either as against himself or his sureties. And in all the above cases, the writ and declaration shall be amended accordingly."

It is evident that the rights and obligations of the parties to this bond must be determined in view of the provisions of the

law of the land in force when the same was executed. And these provisions of the law authorized changes of parties to be made in an action, in which a bond of this nature is given, without impairing the obligations of the bond, which are thus seen to be entirely different from the ordinary obligations assumed by a surety. The cause of action in this case has never been abated or changed, and the plaintiff has continually remained the same and the defendant John A. Dailey has always been a defendant. The changes and substitutions in the parties defendant are the same in effect as would have been the case if, in the action as originally brought, and without other change of parties, the two defendants finally determined to be liable had been held and the remainder had died or had been discharged from liability. Certainly in such a case it could not be contended that there had not been a "judgment for the plaintiff and against the defendants." Moreover, this is a joint and several bond, and at no time has John A. Dailey ceased to be a defendant in the action.

A similar question was presented in *Gilmore* v. *Crowell*, 67 Barb. 62, where an attachment having issued against three defendants, viz.: Patton, Ginn, and Folger, and judgment having been rendered against only two of them, viz.: Patton and Ginn, the sureties on the undertaking given to the sheriff to discharge the other attachment, and which contained the agreement "that we will, on demand, pay to the above named plaintiff the amount of the judgment which may be recovered against the above named defendant in this action," resisted their liability and, as appears in the statement of the case, "The judge at the trial dismissed the complaint, on the ground that the plaintiffs recovered against two only of the three defendants, and therefore there had been no breach of the undertaking." In reversing the judgment of dismissal, the court said (pp. 63–4): "The question presented by this appeal is whether an action can be maintained against sureties upon an undertaking which provides for the payment of the judgment which may be recovered against the defendants, when the judgment recovered is against some of them only. The general

rule is that the contract of a surety is to be construed strictly, and not to be extended beyond the fair scope of its terms (citing cases), and by that rule the obligation of the defendants herein must be ascertained and determined.

"The undertaking which they executed was, as declared by it, 'pursuant to the statute in such case made and provided,' and the design of the statute was to enable the defendant or defendants, in an attachment proceeding, to recover the property seized at once, on giving security to pay the judgment. The intent was to substitute a personal obligation of sureties for the property which could by the attachment proceeding be applied to the payment of the alleged indebtedness when established by due process of law—not to any particular judgment that might be obtained, but to any judgment rendered in the action, whatever it might be.

"The seizure of the property of the defendants named, or either of them, would, to the extent of the value, insure the payment of the claim asserted; and when the defendants, to reclaim it, give the undertaking required, the presumption of its sufficiency to pay the entire debt is proper. The object or design of the statute, and the intent of the legislature being considered, the agreement seems fairly within the scope of the sureties' undertaking, that they will pay any judgment obtained in the action against all or any of the defendants.

"It is through their instrumentality that the property applicable is diverted, and they should see to it that their indemnity shall rest upon more substantial ground than a limited or restricted liability.

"The statute under which the undertaking was given (citing same) provides for an obligation to pay to the plaintiff the amount of the judgment that may be recovered against the defendant in the action; and it is evident that the contemplated benefit to the plaintiff was the payment of the judgment that he might recover. The defendants herein having assumed such obligation, the statute being within their knowledge and referred to in their agreement, must be regarded as having contracted with reference to its design and intent.

"It becomes, therefore, legitimately an element in the consideration of the question of what was intended by the parties, and what is within the fair scope of the contract thus considered."

And see *Christal* v. *Kelly*, 24 Hun. 155.

We are of the opinion that the defendant is liable for the amount of the judgment in question, and the papers in the case will be sent back to the Superior Court with the decision of this court certified thereon.

*John E. Bolan*, for plaintiff.

*Bassett & Raymond*, for defendant.

*R. W. Richmond*, of counsel.