676 P.2d 279 (1983)
Charles M. SMITH, Appellant,
v.
ST. FRANCIS HOSPITAL, INC., Appellee.
No. 59105.
Court of Appeals of Oklahoma, Division No. 1.
September 27, 1983.
Rehearing Denied December 6, 1983.
Certiorari Denied January 31, 1984.
Released for Publication February 3, 1984.
*280 Frank R. Hickman, Tulsa, for appellant.
Jones, Givens, Gotcher, Doyle & Bogan, Inc. by Alfred K. Morlan, Tulsa, for appellee.
Miller, Dollarhide, Dawson & Shaw by George Miller and Charles L. Dollarhide II, Oklahoma City, for amicus curiae, Oklahoma Hosp. Ass'n, Inc.
Released for Publication by Order of the Court of Appeals February 3, 1984.
YOUNG, Judge:
Appellant brought this medical malpractice action to recover damages for permanent injuries he allegedly suffered when his appendix burst following misdiagnosis of his condition and alleged negligent care, treatment and release by emergency room physicians then on duty at Saint Francis Hospital, Inc. (Hospital).
The trial court granted summary judgment in favor of Hospital on the ground that, as a matter of law, the emergency room physicians were not acting as agents, servants or employees of Hospital. Therefore, Hospital could not be held accountable for negligence, if any, of said physicians in administering treatment in Hospital's emergency room. Resulting, the case against Hospital was dismissed. Appellant contends the lower court erred when it released Hospital from any responsibility for the alleged malpractice of its emergency room physicians.
The material facts appearing in the record establish that on January 27, 1980, Appellant was taken by his mother to the emergency room of Hospital for the purpose of being examined and treated for persistent pain in his stomach, groin, right side and leg. According to his mother's deposition, Appellant arrived at the hospital emergency room between ten o'clock and eleven o'clock a.m., at which time Hospital personnel took Appellant's medical history. Appellant's mother alleges she informed the person taking the history she believed her son was suffering from appendicitis, but the boy was not examined by a doctor until approximately five o'clock that afternoon because "they said they had a lot of patients".
Hospital alleged that on January 27, Appellant was examined and diagnosed solely by Dr. Michael Johns. Appellant alleged he was examined not only by Dr. Johns, but also by Dr. James Lockhart and several interns as well; that Dr. Lockhart diagnosed Appellant's condition as spasmatic colon; that Dr. Lockhart gave this diagnosis to Dr. Johns with instructions to likewise advise Appellant's mother. Appellant was then sent home with a prescription for his "colon" problem. Appellant's mother alleges the prescribed medication only worsened Appellant's condition.
On January 28, 1980, Appellant's condition continued to worsen. Consequently, Appellant's mother returned her son to the Hospital's emergency room at approximately four o'clock that afternoon. The record is conflicting concerning who examined Appellant on this occasion. Hospital alleges Appellant was examined by Dr. Lockhart, who confirmed the earlier diagnosis of spasmatic colon. Appellant's mother testified Appellant was seen by a Dr. Burton, the doctor's name appearing on Appellant's prescription for nausea which was prescribed at the hospital on January 28. Thereafter, Appellant was again sent home.
In the early morning hours of January 29, 1980, Appellant's appendix burst causing both blood and a strange green *281 substance to be emitted from Appellant's nose and mouth. An ambulance was called and Appellant was once again taken to Hospital's emergency room. On this third occasion Dr. Lockhart made another diagnosis and determined that Appellant was indeed suffering from acute appendicitis with generalized peritonitis. Appellant was then operated on by Drs. Tommey and Lockhart and thereafter remained in the hospital for approximately ten days.
Appellant alleges that due to the delay in diagnosis and treatment, peritonitis not only set in, but escaped throughout other areas of his body, and as a result thereof he continues to be afflicted with great pain and has sustained injuries of a permanent nature.
Hospital's express renunciation of any and all liability for the alleged negligence of the physicians it authorized to perform medical services in its emergency room is predicated upon the theory that said physicians are not employees, servants or agents of Hospital, but are employees of independent contractors.
With respect to Dr. Johns, Hospital presented evidence that this physician was at all times pertinent to this cause employed by Emergency Care, Inc. (ECI) and ECI was staffing the emergency room pursuant to a contract between Hospital and ECI. However, a close examination of the terms of this contract reveals merely an attempt by Hospital to disclaim responsibility for emergency care services in its facility, while maintaining substantially the same or, arguably, greater control as exercised over all staff physicians admitted to practice at Hospital. In this regard the contract specifically requires that all ECI physicians must be members of the medical staff of Hospital. Furthermore, Hospital acknowledges in the contract that Hospital is engaged in furnishing general acute care services, including emergency care services, and as an incident thereto "desires to secure the services of ECI to provide experienced, licensed physicians for emergency care at the Hospital". Moreover, the contract stipulates that physicians employed by ECI shall abide by and follow the rules and regulations specified by Hospital; that ECI's physicians must be reviewed and approved by Hospital; that ECI physicians must meet Hospital's quality of care standards; and that when it is appropriate and necessary Hospital's appropriate staff physician shall be called in for consultation. Thus, under the contract, ECI agreed to and is bound to achieve a certain result  to staff and operate Hospital's emergency room for Hospital  however, ECI is controlled by Hospital as to the means or manner of achieving this staffing result. A principal-agent relationship denotes a fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act for his benefit and subject to his control, and consent by the other so to act. Restatement (Second) of Agency, § 1 (1958). We conclude ECI is not an independent contractor but an agent of Hospital. Inasmuch as Hospital authorizes its agent, ECI, to employ emergency room physicians to provide services on behalf of Hospital and subject to Hospital's rules, regulations, and qualification, the physicians so employed are not independent contractors but are also agents in the employ of Hospital. Thus, ECI's function is primarily only that of Hospital's emergency room personnel agency.
Further factors are present which mandate this conclusion. The billing of emergency room patients is within the exclusive control of Hospital, and the doctor's fees are based entirely upon rates set forth by Hospital in the contract. The clerical and medical support personnel are provided by Hospital at no cost to ECI, as is the facility itself, and all instruments and supplies. We conclude that the record points to the conclusion, as a matter of law, that Dr. Johns was not an independent contractor.
With respect to Dr. James Lockhart, Hospital admits that this physician is a staff physician, but disclaims liability on the ground that although Dr. Lockhart is not employed by ECI, he is a partner in Surgical Associates, Inc. (SAI). However, *282 it is undisputed that a contract does not exist between Hospital and SAI. The fact of Dr. Lockhart's partnership in SAI is irrelevant in the absence of any consensual relationship or contractual privity between Hospital and SAI. Dr. Lockhart is simply a staff physician who collaterally happens to be a partner in SAI. Dr. Lockhart could be a partner or member of many associations.
Of course, the fact that a physician or surgeon is on a hospital's staff does not necessarily make him an employee of that hospital. Evans v. Dr. J.J. Bernhard & Physicians & Surgeons Hospital, Inc., 23 Ariz. App. 413, 533 P.2d 721 (1975). The general rule is that the extent of the duty of a hospital with respect to actual medical care of a professional nature such as is furnished by a physician is to use reasonable care in selecting medical doctors. Darling v. Charleston Community Memorial Hospital, 33 Ill.2d 326, 211 N.E.2d 253 (1965). However, the general rule is not without limitation. In the case before us Hospital held itself out to the public offering and rendering hospital services. It is entirely reasonable that patients entering Hospital through its emergency room properly relied upon Hospital's representation that the treating doctors and staff of Hospital's emergency room were acting on behalf of Hospital, and not as individuals. Accordingly, the Restatement (Second) of Torts § 429 (1966), provides:
One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.
In addition, Comment b of § 429 provides:
The rule is applicable if "the negligence of the contractor consists * * * in carelessness in the detail of rendering them".
Similarly, in Grewe v. Mt. Clements General Hospital, 404 Mich. 240, 273 N.W.2d 429 (1978) the Court stated:
Generally speaking, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients. See Anno: Hospital-Liability-Neglect of Doctor, 69 A.L.R.2d 305, 315-316. However, if the individual looked to the hospital to provide him with medical treatment and there has been a representation by the hospital that medical treatment would be afforded by physicians working therein, an agency by estoppel can be found. See Howard v. Park, 37 Mich. App. 496, 195 N.W.2d 39 (1972), Iv. dn. 387 Mich. 782 (1972). See also Schagrin v. Wilmington Medical Center, Inc., 304 A.2d 61 (Del. Super. Ct. 1973).
In our view, the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems.
Thus, even assuming, arguendo, that Hospital's emergency room personnel, including not only Dr. Lockhart, but Dr. Burton and ECI's physicians as well, were independent contractors, we reach the conclusion that because there was an absence of a preexisting patient-physician relationship and Appellant looked solely to and relied upon Hospital for his treatment and was treated by medical personnel regulated and authorized by Hospital to render medical services in its emergency room, and because said personnel were placed by Hospital in a position of apparent authority to act on behalf of Hospital, Hospital is estopped from denying responsibility for the alleged negligence of its ostensible agents. Certainly, members of the public who avail themselves of a hospital's emergency room services under these circumstances have a right to expect competent medical treatment from the medical personnel cloaked with ostensible authority by the hospital's *283 conduct which reasonably leads the public to believe that medical treatment will be afforded by physicians acting on behalf of the hospital, and not on their respective individual responsibility. Consequently the hospital must be held accountable for the negligence, if any, of its authorized emergency room physician regardless of whether or not he is an independent contractor by secret limitations contained in private contract between the hospital and doctor or by virtue of some other business relationship unknown to the patient and contrary to the hospital's conduct and representations.
The above premises considered, the order of the trial court granting summary judgment in favor of Hospital and dismissing Hospital from suit, as a matter of law, is hereby reversed and this cause is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
REYNOLDS, P.J., and ROBINSON, J., concur.