**Jennifer WELDON, a minor By and Through her father and natural guardian, Leonard WELDON, and Leonard Weldon, Appellants,**

v.

**SEMINOLE MUNICIPAL HOSPITAL, a municipally-owned hospital, Appellee.**

No. 61156.

Supreme Court of Oklahoma.

Nov. 25, 1985.

Abel, Musser, Sokolosky & Clark by Ed Abel, Glen Mullins and Larry D. Bishop, Oklahoma City, for appellants.

Deaton & Davison, Inc. by Martha K. Kilgore, Ada, for appellee.

HODGES, Justice.

Jennifer Weldon, a minor, was treated in the emergency room at Seminole Municipal Hospital (appellee or Hospital) on April 11, 1975, for the extraction of a bead lodged in her right ear canal. Jennifer was seen in the Hospital's emergency room by Dr. C.H. Price, the Weldons' family physician. Dr. Julian S. Wood was at the Hospital during such time to see a person on the floor and happened to walk by the emergency room. After a brief consultation with Dr. Price, Dr. Wood gave his informal opinion that Dr. Price should refer the patient to an ear specialist for removal of the foreign body and treatment. When Dr. Price was unable to extract the bead she was transferred to Presbyterian Hospital in Oklahoma City where it was surgically removed. Jennifer Weldon, by and through her father, Leonard Weldon, and Leonard Weldon, individually, (appellants) sought damages for the loss of hearing in her right ear as a result of the perforation of the tympanic membrane. Dr. C.H. Price, Dr. Julian S. Wood and Seminole Municipal Hospital were named as defendants. Appellants based their suit for damages on the alleged negligence of Drs. Price and Wood and the Hospital in their treatment of Jennifer. Appellants assert the Hospital is liable for its own acts of negligence or under the theories of respondeat superior or agency. The Hospital's liability was considered when the matter came on for hearing in the District Court of Seminole County on the Hospital's Motion for Summary Judgment. The motion was sustained by the Honorable Gordon R. Melson, District Court Judge of Seminole County.

The questions raised on appeal arise from the trial court's ruling sustaining appellee's Motion for Summary Judgment and dismissing appellee as a party to this action. Appellants ask this Court to reverse the trial court's ruling based on three issues in which they contend create a substantial controversy as to the Hospital's liability. The issue to be decided on appeal is whether or not the Hospital was entitled to summary judgment in this case as a matter of law on the following theories: 1) respondeat superior, 2) ostensible agency, and 3) the independent acts of negligence of the Hospital.

■ On appeal, a party will be entitled to summary judgment as a matter of law when the record before the trial court presents no genuine issues of material fact. *Garner v. Johnson,* 609 P.2d 760 (Okla. 1980); *First Nat'l Bank and Trust Co. of Oklahoma City v. Nesbitt,* 598 P.2d 1197 (Okla.1979).

The majority of courts, including Oklahoma, do not extend the theory of respondeat superior to a hospital where the doctor exercises his own independent judgment and is an independent contractor and not an employee. *Smith v. St. Francis Hosp.,* 676 P.2d 279 (Okla.Ct.App.1983); *Van Cleave v. Irby,* 233 P.2d 963 (Okla.1951). Oklahoma, however, has joined those jurisdictions which have made an exception to the general rule that a doctor is an independent contractor and a hospital is exempt from invocation of respondeat superior. The Oklahoma Court of Appeals set out the ostensible agency or agency by estoppel exception in *Smith v. St. Francis Hosp., supra.* The hospital in *Smith* was estopped from denying responsibility for the negligence of its emergency room physicians. The court, assuming arguendo, that the emergency room physicians were independent contractors, reached the conclusion

that the hospital held itself out to the public as rendering medical care and that patients reasonably relied on the hospital's representation that the treating doctors were acting on behalf of the hospital. In *Smith*, the critical factor used to establish hospital liability on ostensible agency theory was the absence of a pre-existing doctor-patient relationship. Notwithstanding the doctor's status as an independent contractor, the hospital was estopped from denying liability because the patient looked solely to the hospital to provide medical personnel and the patient had no reason to believe that the physicians placed in the emergency room were acting in their own behalf rather than in the hospital's. *Smith*, 676 P.2d at 282.

The present case can be distinguished from *Smith* in that the Weldons had a pre-existing doctor-patient relationship with Dr. Price. In the instant case, the Weldons had no basis for believing Dr. Price was acting in behalf of the Hospital. Jennifer's mother called Dr. Price at home seeking his help. Dr. Price met Mrs. Weldon and Jennifer at the emergency room so that he could take care of Jennifer. The Weldons were not looking to the Hospital to provide medical care; rather, the Hospital merely provided its facilities so that Dr. Price, exercising his own independent judgment, could render care.

In *Adamski v. Tacoma General Hospital*, 20 Wash.App. 98, 579 P.2d 970, 975 (1978) the Washington Court of Appeals followed those jurisdictions abolishing a hospital's absolute exemption from the application of respondeat superior. The "formula" adopted in *Adamski* to hold hospitals liable for the negligence of staff physicians is a two part test. The first consideration is whether "the patient sought treatment primarily from the hospital" and the second consideration is whether "the hospital paid the doctor a salary." *Adamski*, 579 P.2d at 975. Neither of these considerations is present in this case. The Weldons sought treatment from their family physician and; therefore, the Hospital was not the primary medical care provider. In addition, although Dr. Price possessed staff privileges at the Hospital and was furnished a rent free temporary medical office, a rent free home for his personal use, three meals per day at no cost and a laboratory; he was not paid a salary by the Hospital nor were his services billed out by the Hospital. Although most courts, including Oklahoma, have expanded hospital liability based on ostensible agency or the lack of independent contractor status with the doctor, they still uniformly refuse to impose vicarious liability on a hospital where "the patient contacts his personal physician and ... the doctor looks directly to the patient for his fees...." *Adamski*, 579 P.2d at 975. The doctor in this situation is treated as an independent contractor acting in his own behalf and respondeat superior is not applicable.

In order to invoke respondeat superior or agency by estoppel the test as adopted by the Oklahoma Court of Appeals is:

"[W]hether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems." *Smith*, 676 P.2d at 282.

In this case it is clear that the Weldons merely viewed the Hospital as a place where Dr. Price would treat Jennifer and did not look to the Hospital to provide treatment.

 Based on the facts before the trial court concerning the relationship between the Hospital and Dr. Price, there is no genuine issue as to whether the facts give rise to liability based on respondeat superior or ostensible agency. It was proper for the trial court to resolve this issue by summary judgment.

Appellants also urge that notwithstanding the negligence of Dr. Price, the Hospital can be held liable for its own independent acts of negligence. This contention is based on the alleged failure of Linda Jo Goodnight, L.P.N., who was an employee of the Hospital and who assisted Dr. Price in the treatment of Jennifer, to take fur-

ther action after observing Dr. Price's difficulty in removing the bead from Jennifer's ear. In this connection, a number of courts have held that a hospital could be found liable for failing to review, supervise or require a consultation with regard to the medical treatment given by a physician in a hospital's emergency room. *Darling v. Charleston Community Memorial Hospital,* 33 Ill.2d 326, 211 N.E.2d 253 (1965). Oklahoma has adopted the rule that a hospital has an implied duty to exercise ordinary care and attention in proportion to the physical condition of the patient. *Hillcrest Medical Center v. Wier,* 373 P.2d 45 (Okla. 1962).

■ These cases, however, are quite different than the present case. *Darling* and *Wier* impose a duty on a hospital to supervise a patient's care and review a doctor's work *after* the patient has been admitted. In the present case, Jennifer was transferred to another hospital where she was subsequently admitted. Jennifer was Dr. Price's patient and her care was never within the discretion of the Hospital. There should not be a duty on a hospital to supervise the treatment given by a doctor acting within his own discretion as to the care of his patient where the patient is not subsequently admitted and subject to the hospital's care. In the cases cited by appellants in their brief-in-chief, the patient was admitted in the defendant hospital whereby he suffered further injury as a result of the hospital employee's negligence. *Wier* is distinguished from the present case in that the hospital in *Wier* had direct control over the details of the patient's care. Because the details such as time and manner of treatment were left to the discretion of the hospital there was an implied duty on the part of the hospital to exercise ordinary care in rendering treatment to the patient. In this case, there is no indication that the Hospital had direct control over the details of treatment given to Jennifer. There was no discretion on the part of the Hospital in the type or manner of treatment rendered by Dr. Price. Moreover, the assisting nurse was under Dr. Price's control and direction and was the loaned servant of Dr.

Price. *Turney v. Anspaugh,* 581 P.2d 1301 (Okla.1978); *Aderhold v. Bishop,* 94 Okl. 203, 221 P. 752 (1923).

■ Based on the foregoing facts, appellants' evidence is not sufficient to create a genuine issue of negligence on the part of the Hospital. The record does not support appellants' allegations that the Hospital is liable for its own independent acts of negligence. It was proper for the trial court to resolve this issue by summary judgment.

■ In all three contentions raised by appellant on appeal, this Court, as well as other jurisdictions, have looked to a hospital's role and the amount of control it possesses over the care rendered to a patient. The Hospital's role in this case was to simply provide the medical facilities whereby Dr. Price could render emergency care to his patient. The Hospital did not exercise any control over Dr. Price other than staff privileges and the care rendered to Jennifer was within her family physician's independent medical judgment. These facts and circumstances do not fall within any of the exceptions set out above; rather, this is a case of the traditional independent contractor relationship of a doctor and hospital.

On review, this Court will uphold a ruling sustaining a Motion for Summary Judgment if the facts before the trial court present no genuine issues of material fact. In the present case, there was no significant relationship between the Hospital and the doctor nor was there any discretion on the part of the Hospital in the care rendered to appellant. The evidence in this case is susceptible of but one inference; that is, Dr. Price was an independent contractor and therefore it was proper to take the issues of respondeat superior and agency from the jury. Likewise, there is insufficient evidence to support appellants' contention of independent acts of negligence.

The District Court's decision sustaining Seminole Hospital's Motion for Summary Judgment is AFFIRMED.

SIMMS, C.J., DOOLIN, V.C.J., and LAVENDER and OPALA, JJ., concur.

HARGRAVE, WILSON, KAUGER and SUMMERS, JJ., dissent.