**Ruth H. CREECH, Plaintiff–Appellee, Cross–Appellant,**

v.

**Oral ROBERTS, Richard Roberts, City of Faith Hospital, Oral Roberts Evangelistic Association, Brent Bennett, M.D., Michael Laughlin, M.D., Defendants,**

**City of Faith Medical and Research Center, Michael McGee, M.D., Defendants–Appellants, Cross–Appellees.**

**Nos. 88–4180, 89–3096.**

United States Court of Appeals, Sixth Circuit.

Argued March 12, 1990.

Decided July 13, 1990.

Rehearing Denied Sept. 6, 1990.

Rehearing En Banc Denied Sept. 7, 1990.

T. David Burgess, Williamsburg, Ohio, Lawrence R. Fisse (argued), Batavia, Ohio, for plaintiff-appellee, cross-appellant.

Joseph M. Best, John H.T. Sheridan, Best, Sharp, Sheridan & Stritzke, Tulsa, Okl., Charles E. Brown, Brian E. Hurley, Crabbe, Brown, Jones, Potts & Schmidt, Cincinnati, Ohio, Joseph A. Sharp (argued), Richard D. Wagner (argued), Wagner, Stuart & Cannon, Tulsa, Okl., for defendants-appellants, cross-appellees.

Before GUY and BOGGS, Circuit Judges, and COHN, District Judge [*].

COHN, District Judge.

The plaintiff and two of the defendants appeal from the judgment in this medical malpractice action, brought pursuant to Oklahoma law. For the reasons that follow, we affirm in part, vacate in part, and remand for a new trial on the issue of damages.

## I.

In the beginning, plaintiff-appellee and cross-appellant Ruth Creech (Creech), an Ohio resident, filed this action in state court in Ohio, raising medical malpractice and lack of informed consent claims against the City of Faith Hospital (the Hospital), the City of Faith Clinic (the Clinic), defendant-appellant and cross-appellee the City of Faith Medical and Research Center (the Center), and physicians Brent Bennett, Michael Laughlin, and defendant-appellant and cross-appellee Michael McGee (McGee). All of the claims arose out of injuries incurred while Creech was a patient at the Hospital in Tulsa, Oklahoma. The Hospital removed the action to federal court. Creech subsequently amended her complaint, adding defendants Oral Roberts and Richard Roberts, and raised fraud claims against them. After further discovery, Creech again amended her complaint, adding the Oral Roberts Evangelical Association (OREA) as a defendant, removed the Clinic as a defendant, and raised a fraud claim against OREA.[1]

The district court bifurcated trial into a liability phase and a damages phase. Just prior to the beginning of the liability phase, Creech voluntarily dismissed the claims against Michael Laughlin and Brent Bennett. The trial began August 1, 1988. Seven days later, the district court granted a motion for a directed verdict on the issue of fraud and directed the jury to find in favor of the defendants Oral Roberts, Richard Roberts, OREA, the Hospital, and the Center. In exchange for a covenant not to appeal the directed verdict, OREA paid Creech valuable consideration and agreed to indemnify her against any attempts by the Hospital or the Center to collect her outstanding hospital bills.[2] On August 10, 1988, near the completion of the liability

---

[*] Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1.] Although Creech's Second Amended Complaint only inferentially raises fraud claims against the Center and the Hospital, the text of the settlement agreement and Creech's trial brief show that, by the time of the trial, the parties did not dispute that the Center and the Hospital were defendants in the fraud action as well.

In addition, the Court notes that the Clinic was dismissed as a defendant because there is no such legal entity as the "City of Faith Clinic." Apparently, the City of Faith Medical and Re-

search Center is referred to frequently as "the Clinic."

[2.] As part of the settlement agreement, Creech agreed not to disclose its terms. This shroud of secrecy was maintained rigorously throughout the trial by the district court, so much so that the Hospital and the Center remain unaware of all of the terms of the settlement. While we make no ruling on the propriety of the district court's approach to this matter, we note that keeping the terms of the settlement secret from other parties undoubtedly complicated matters and may have precipitated some of the errors that we now address.

phase of the trial, the district court granted the Hospital's motion to dismiss the claim of lack of informed consent. On August 11, 1988, the jury returned a verdict against McGee and the Center on the claim of lack of informed consent.

On August 19, 1988, the Center filed a motion to dismiss for lack of jurisdiction or, in the alternative, for judgment notwithstanding the verdict. McGee also filed a motion to dismiss for lack of jurisdiction. The district court orally denied the motions.

The damages portion of the trial began on September 1, 1988. On September 2, 1988, the jury returned a verdict awarding $50,000 in damages against McGee and the Center. On September 13, 1988, the Center filed a motion for judgment notwithstanding the verdict and to reopen the judgment to grant credit for the amount of the settlement paid by OREA. McGee moved to alter and amend the judgment or, in the alternative, for judgment notwithstanding the verdict. Creech moved for a new trial. The district court denied all of the motions.

Creech, McGee, and the Center now appeal. Creech seeks a new trial on the issue of damages, arguing that the amount of the award is contrary to the great weight of the evidence and so inadequate as to shock the conscience. She also claims that the inadequacy of the verdict can be linked to the improper questions and remarks of McGee's counsel and to the district court's ruling excluding any mention of her hospital bill from the trial.

Both McGee and the Center seek a dismissal of Creech's claims on the ground that the district court's exercise of jurisdiction over them violated their constitutional right to due process under the Fourteenth Amendment. They assert that the district court could not exercise jurisdiction over them under the Ohio long-arm statute because they did not have sufficient minimum contacts with Ohio to confer such jurisdiction. Both also argue that the damages awarded by the jury should be reduced by the amount of a settlement entered into by Creech with defendants OREA, Oral Roberts, and Richard Roberts. Finally, the

Center argues that it cannot be held liable for McGee's negligence on the theory of vicarious liability because his actions were not within the scope of his employment.

For the reasons stated below, McGee is dismissed from the case, and the matter is remanded to the district court for a new trial on the issue of damages.

## II.

### A.

Creech is a citizen and resident of the state of Ohio. McGee and the Center are citizens and residents of the state of Oklahoma. Both have at all times denied that they were subject to the district court's in personam jurisdiction. Therefore, the Court will address the assertions of both defendants as to personal jurisdiction in a single discussion.

Creech's cause of action arose from medical care and treatment she received in Tulsa, Oklahoma, at the Center. Her cause of action against McGee was based on an alleged failure to obtain informed consent prior to performing surgery, and her cause of action against the Center was based on a vicarious liability theory. McGee provided no medical care or treatment to Creech in Ohio, has never practiced medicine in Ohio, is not licensed to practice medicine in Ohio, and has not maintained any office, facility, or business within Ohio. The Center provided no treatment to Creech in Ohio, has not mailed information to or received mail from Ohio, or had agents or employees physically present in Ohio.

Creech initially became aware of the Hospital and the Center through the "Expect a Miracle" television program featuring Oral and Richard Roberts. Through the program, Oral Roberts, the spokesperson for OREA, the Hospital, and the Center, invited people to come from around the country, as well as from other countries, to the Hospital and the Center for treatment. Each broadcast would begin by showing the City of Faith logo above the words "City of Faith." During the broadcasts, the words "City of Faith Clinic Appointments" and a telephone number appeared

on the television screen, accompanied by various pictures of the facilities at the Hospital and the Center.

The "Expect a Miracle" broadcasts solicited patients and funds for the Hospital and the Center. Ohio was one of the states receiving the broadcasts, and, in fact, Ohio residents other than Creech were convinced to go to the Hospital and the Center for treatment. Creech testified at trial that the broadcasts made her aware of the Hospital and the Center and provided her with information that enabled her to contact the Center and make an appointment for a medical examination.

### B.

■ In determining whether it can assert personal jurisdiction over a nonresident defendant in a diversity case, a district court must apply the law of the state in which it sits, subject to due process limitations. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). Because Creech chose Ohio as the forum for her cause of action, the district court derived its jurisdiction from the provisions of Ohio's long-arm statute, Ohio Rev.Code § 2307.382 (Anderson 1988 & Supp.1989). That statute confers on the district court the ability to exercise specific or limited personal jurisdiction over a nonresident defendant where the cause of action arises out of an act or acts creating one of several designated relationships.

Here, Creech argues that the district court properly exercised specific jurisdiction on the grounds that the Center transacted business in Ohio, Ohio Rev.Code Ann. § 2307.382(A)(1) (Anderson 1988 & Supp. 1989).[3] The question thus becomes whether the broadcasts televised in Ohio constitute "transacting business" for purposes of the statute. Because it is a settled proposition of Ohio law that the portion of the

long-arm statute cited above was intended to extend to the constitutional limits of due process, we must determine whether a decision that the Center and McGee transacted business in Ohio would violate due process. *See In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224–25 (6th Cir. 1972). To comport with due process, three criteria must be met:

First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1299 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990) (citing *Southern Machine Co. v. Mohasco Industries*, 401 F.2d 374, 381 (6th Cir.1968)).

McGee and the Center argue that none of the criteria applies to them because they were never present in the state of Ohio. However, the Supreme Court has held that parties that reach out beyond one state to create relationships with citizens of another are subject to regulation and sanctions in the other state for the consequences of their activities, regardless of whether they were actually present in that state. *Burger King v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 2182–83, 85 L.Ed.2d 528 (1985). Advertising is among the activities that constitute "reaching out" to forum state residents. *See LAK*, 885 F.2d at 1300; *see also Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990) (holding that cruise line that advertised, provided brochures to travel agents, and periodically held seminars for travel agents in Washington was subject to personal jurisdiction

---

**3.** Creech also argues that the district court properly invoked pendent party jurisdiction to create jurisdiction over McGee. We disagree. Pendent party jurisdiction involves the issue of whether a court may exercise jurisdiction over a separate party when the court lacks *subject matter jurisdiction* over that party. *See Aldinger v.*

*Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). The concept is entirely unrelated to personal jurisdiction. Therefore, the Court must determine whether any other basis for the district court's exercise of personal jurisdiction over McGee exists.

there). OREA, through the "Expect a Miracle" program, clearly reached out to the forum state, but the district court's jurisdiction over OREA is not questioned. Instead, we must decide whether OREA's activities constitute purposeful availment in Ohio or reaching out into Ohio by McGee and by the Center.

■ The Court has been unable to find, and Creech does not cite, any case in which a trial court has asserted personal jurisdiction over a nonresident doctor who committed a tortious act outside the forum state—even where the doctor worked for a hospital that advertised in the forum state. Indeed, every case reported seems to reach the opposite result. *See, e.g., Pijanowski v. Cleveland Clinic Foundation,* 635 F.Supp. 1435, 1436 (E.D.Mich.1986); *Lemke v. St. Margaret Hosp.,* 594 F.Supp. 25, 27 (N.D.Ill.1983). Therefore, the district court's assertion of personal jurisdiction over McGee was improper, and the claim against him must be dismissed.

In contrast, because OREA, through Oral and Richard Roberts, advertised on behalf of the Center by broadcasting the "Expect a Miracle" program, we find that the Center purposefully availed itself of the privilege of acting in Ohio. In its brief, the Center asserts that it has never been "charged" with being a principal for OREA and that funds solicited through the "Expect a Miracle" program were received by OREA. These arguments are largely irrelevant. Whether or not the Center officially or unofficially agreed to have OREA act as its agent, it is clear that the Center permitted OREA to solicit patients on its behalf through broadcasts of the "Expect a Miracle" program in Ohio. These were not the sort of "random," "fortuitous," or "attenuated" contacts that have been held to be insufficient to warrant jurisdiction. *See, e.g., World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490 (1980). The Center knowingly accepted the benefits of these solicitations and never complained about OREA's activities. This created an agency by estoppel. *See Blackwell v. UAW,* 9 Ohio App.3d 179, 458 N.E.2d 1272,

1275 (1983). The Center cannot now deny its contacts with the forum by claiming that OREA was a stranger to it.

■ The next factor to be considered is whether Creech's cause of action arose from the Center's activities in the forum state. An action will be deemed not to have arisen from the defendant's contacts with the forum state only when they are unrelated to the operative facts of the controversy. *Third Nat'l Bank v. Wedge Group Inc.,* 882 F.2d 1087, 1091 (6th Cir. 1989), *cert. denied,* ——U.S. ——, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990) (citing *Southern Machine,* 401 F.2d at 384 n. 29). That clearly was not the case here. If the "Expect a Miracle" program had not been televised in Ohio, Creech would never have become interested in seeking healing at the Center, would never have seen the phone number to call to make an appointment at the Center, and would never have undergone surgery at the Center. Because her exposure to the program brought her into contact with the Center, the Court finds that her cause of action did arise from the Center's activities in Ohio.

Finally, we must determine whether the district court's exercise of jurisdiction over the Center was reasonable.

[W]here a defendant who purposefully directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional.

*Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85. Moreover, when the first two factors of the *Southern Machine* test are met, only the unusual case will not satisfy the third factor. *Wedge,* 882 F.2d at 1092. The Center presents no other considerations suggesting that the district court's exercise of jurisdiction was unreasonable. Indeed, because it solicited funds and patients from Ohio, the Center should have expected to be subject to the jurisdiction of Ohio courts. It cannot be heard now to complain of surprise at such a result.

### III.

█ Next, the Center argues that it cannot be held vicariously liable for the acts of a physician, McGee, under the facts of this case. Because the district court failed to instruct the jury as to whether the alleged malpractice was within the scope of McGee's employment, the Center asserts that the district court effectively directed a verdict against it. We disagree.

Despite citations to the law of numerous jurisdictions and a lengthy discourse on principles of the law of agency, the focal point of the Center's brief on this issue is *Smith v. Saint Francis Hospital,* 676 P.2d 279 (Okla.Ct.App.1983).[4] The district court relied on *Smith* in instructing the jury, and the Center desperately tries to distinguish *Smith* from the current matter. *Smith* stands for the proposition that a hospital is vicariously liable for the acts of a staff physician when the patient comes to the hospital as an entity seeking medical services and has no pre-existing relationship with the physician. *Id.* at 282–83. Here, Creech came to the Center, not to a specific doctor. She had no prior relationship with McGee. The Center urges a distinction on the ground that McGee's actions were medical decisions, implicating him alone. However, the misdiagnosis that occurred in *Smith* was also a medical decision. That fact had no effect on the extent of the hospital's liability. Thus, no matter how hard the Center tries to define the scope of McGee's employment to exclude acts that might subject it to liability, it cannot do so under *Smith.* The district court's decision on this issue is affirmed.

### IV.

█ Finally, the Center asserts that the district judge wrongfully denied it a credit in the amount of the settlement agreed to by defendants Oral Roberts, Richard Roberts, and OREA against the amount of the verdict returned by the jury. Oklahoma law discharges joint tortfeasors who settle the claims against them from liability for contribution. Okla.Stat. tit. 12 § 832(H)(2) (1988). However, joint tortfeasors who go to trial on claims arising from the same injury retain a right of set-off against the amount of the settlement:

> When a release, covenant not to sue or a similar agreement is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death: ... it reduces the claim against others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater.

Okla.Stat. tit. 12 § 832(H)(1) (1988). Based on this statute, the Center asserts a right to set off the jury verdict against the amount of the settlement. Creech disputes that right. Both parties agree that interpretation of the statute is governed by *In re Jones,* 804 F.2d 1133 (10th Cir.1986). *Jones* provides that the statute applies where three conditions are met: 1) there is a release or covenant not to sue given to one of two or more persons; 2) the multiple parties are liable in tort; and 3) they are liable for the same injury. *Id.* at 1140. Both parties also agree that the first two conditions are met in this case. Therefore, the Court need only decide if the Center is liable for the same injury as Oral Roberts, Richard Roberts, and OREA.

We conclude that the injuries are not separate and distinct. In *Jones,* the Court of Appeals for the Tenth Circuit held that joint tortfeasors' actions leading to the destruction of an oil well were all part of the same injury and that contribution was appropriate. *Id.* at 1143. Section 832(H) does not require that the parties act in concert in order to be liable as multiple tortfeasors, as long as they cause or contribute to the same injury. *Id.* The *Jones* court referred to two medical malpractice cases as illustrations of what constitutes the same injury under Oklahoma law. In one, negligent surgery was performed by two doctors, and a third doctor's attempt to

---

4. Based on a conflict of laws analysis, the district court determined that it was required to apply Oklahoma law to Creech's medical malpractice claims. None of the parties disputes this determination.

rectify the complications caused serious injury. The plaintiff sued all three doctors and the hospital. The hospital settled prior to trial, and the court deducted the settlement amount from the verdict against the doctors. *Id.* at 1142. In the second case, litigated before the passage of § 832(H), the court concluded that the injury caused by the initial tortfeasor was the proximate cause of the subsequent unskillful medical treatment and held that there existed a proper relationship for the right of contribution. *Id.* at 1143.

From these examples, it is clear that the fraud claims settled against Oral Roberts, Richard Roberts, OREA, the Hospital, and the Center were part of the same injury as the lack of informed consent claims brought against the Hospital, the Center, and McGee. Until the time that the fraud claims were settled, Creech maintained that all of the fraud defendants caused and contributed to her injuries.

Essentially, Creech's theory of the case, though never proven in its entirety, was as follows: The City of Faith Hospital and Medical and Research Center were suffering financial difficulties. To generate income for them, OREA decided to solicit contributions and patients for the City of Faith facilities. To increase contributions and entice patients to travel to the City of Faith, the "Expect a Miracle" programming was produced. Oral Roberts and Richard Roberts appeared on the programs claiming that those who went to the City of Faith would receive a special kind of healing treatment, augmented by the power of God. Creech saw the programs and believed that she would experience God's healing power if she went to the City of Faith. She sought treatment there and was told that she needed surgery. Ultimately, surgery was performed without her being fully informed of other treatment options. This behavior by the doctors was allegedly part of the fraudulent plan, never proven at trial, to keep patients at the City of Faith in order to squeeze as much money out of them as possible.

Given the manner in which Creech's claims intertwine in her theory of the case,

there can be no doubt that both were part of the same injury. Therefore, Oklahoma law entitles the Center to a set-off in the amount of the settlement.

## V.

Creech appeals only the jury verdict on the issue of damages. She claims that the trial court erred in denying her motion for a new damages trial for several reasons. She asserts that the $50,000 awarded by the jury was grossly inadequate and attributes the inadequacy of the verdict to the short time spent deliberating by the jury, improper questioning and improper statements made during closing argument by McGee's counsel, and the trial court's improper exclusion of Creech's hospital bill as an item of damages and a subject for closing argument. Because the Court agrees that the trial court improperly excluded Creech's hospital bill from the evidence as to the injuries she suffered, it need not reach any of the other issues raised in her appeal.

## A.

■ The tort of lack of informed consent requires proof of three elements: nondisclosure, causation, and injury. *Smith v. Reisig,* 686 P.2d 285, 288 (Okla.1984). In the liability phase of the trial, the jury determined that Creech had been the victim of nondisclosure and that she would not have consented if she had been adequately informed. This finding shows that Creech successfully proved the first two elements of the tort. During the damages portion of the trial, Creech sought to prove the extent of her injuries resulting from the lack of informed consent. We find that the district court erroneously inhibited her ability to do so by excluding her hospital bills from evidence.

■ "[W]here liability is premised upon the physician's failure to inform of non-surgical alternatives, one of the elements of damage is the injury and expense caused by the surgery itself, including any complications which may arise, whether resulting from defective treatment or not."

*Id.* Thus, Creech's hospital expenses would serve as evidence of some of the key elements of her damages. The hospital bills are the best evidence of the expenses attributable to her surgery. The magnitude of the bills also reflects the magnitude of the complications that Creech suffered as a result of the surgery performed. Under Oklahoma law, if a physician fails to disclose alternatives to surgery, the patient's consent is invalid, and the physician is to be held responsible for the consequences. *Id.* at 289. Creech should have been permitted to make the jury aware that those consequences included her being billed for a six-week hospital stay rather than the 10–day hospital stay normally required for the surgical procedure performed.

The district court decided to exclude Creech's hospital bills from the evidence in the damages phase because of the settlement agreement reached with OREA, Oral Roberts, and Richard Roberts. That agreement included a hold harmless provision in which OREA, Oral Roberts, and Richard Roberts agreed to indemnify Creech in the event that the Hospital or the Center tried to collect on the outstanding bills. Given the hold harmless provision, the district court reasoned that Creech's hospital bills could play no part in the damages phase of the trial because Creech was not entitled to recover twice for the same element of damages. This concern is renewed in the Center's response to Creech's appellate brief.

Based on our interpretation of Okla.Stat. tit. 12 § 832(H)(1), *supra,* such fears of double recovery by Creech are unfounded. Because the Center is entitled to a set-off of the settlement amount against any jury verdict, double recovery is impossible. The value of the hold harmless agreement must be deducted from any damages awarded. Therefore, we conclude not only that Creech's hospital bills are necessary to prove an essential element of her lack of informed consent case under Oklahoma law, but also that no plausible argument supports their exclusion.

**B.**

"[N]o error in the admission or exclusion of evidence is ground for reversal or granting a new trial unless refusal to take such action appears to the court to be inconsistent with substantial justice." *McGowan v. Cooper Indus., Inc.,* 863 F.2d 1266, 1271 (6th Cir.1988) (quoting *TCP Indus., Inc. v. Uniroyal, Inc.,* 661 F.2d 542, 551 (6th Cir.1981)). Under this standard, we believe that Creech is entitled to a new trial on the issue of damages. Her appellate brief lists her actual damages as $78,711.38. She reaches this figure by adding her hospital bills ($55,000), her post-discharge medical expenses ($6,045.50), and her expected costs of pain medication for the rest of her life ($17,665.88). The jury returned a verdict awarding her $50,000, an amount less than the total of the hospital bills. Given the amount of Creech's actual damages and the fact that she may be entitled to compensation for pain and suffering, this is clearly an unacceptable result. Thus, substantial justice requires that we vacate the damages award and remand for a new trial.

**VI.**

As noted above, Creech's settlement agreement with OREA, Oral Roberts, and Richard Roberts provides that its terms must be kept secret. Out of necessity and upon the request of this Court, Creech has disclosed all of the terms of the agreement except for the amount of the settlement. That information is contained in a district court transcript currently subject to a protective order. We have not needed to lift that order to resolve the issues raised on appeal and do not do so now. However, we cannot envision how the district court will be able to conduct a new trial on the issue of damages without revealing this information to the Center. It will be almost impossible to set off the new verdict against the settlement amount *and* keep the settlement amount secret. Obviously, no one other than the Center needs to know about the size of the settlement, and that information probably would not be needed until the post-trial stage. While we leave the resolu-

tion of this matter to the judgment of the district court, we note that an unreasonable emphasis on keeping secrets from the Center is likely only to make the new trial more awkward and increase the chances for error.

## VII.

In light of the foregoing, McGee is dismissed from the case because he was not subject to the district court's jurisdiction. The judgment against the Center on the theory of vicarious liability stands. The jury's damages award is vacated, and the case is remanded for a new trial on that issue. Once a verdict is reached, the Center is entitled to a credit in the amount of the settlement entered into by Creech with OREA, Oral Roberts, and Richard Roberts.

RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.

I join Judge Cohn's thorough and well-reasoned resolution of each issue raised by the parties except personal jurisdiction. With regard to personal jurisdiction, I would hold that both Dr. Michael McGee and the City of Faith Medical and Research Center (the Center) have waived the defense by failing to seek dismissal on such a theory in timely fashion. Therefore, I would remand the plaintiff's claims against both Dr. McGee and the Center for a new trial on damages.

Defendants McGee and the Center listed the absence of personal jurisdiction among the affirmative defenses in their answers to the plaintiff's original and amended complaints. Nevertheless, they did not formally assert lack of personal jurisdiction as a basis for dismissal until they filed their motions following the trial as to liability, more than 18 months after the plaintiff commenced this action.[1] Federal Rule of Civil Procedure 12(h)(1) provides that the lack of personal jurisdiction defense "is waived ... if it is neither made by motion under [Rule 12] nor included in a respon-

sive pleading or an amendment there-of...." Thus, the defendants' references in their answers to the absence of personal jurisdiction enabled them to avoid waiving personal jurisdiction under Rule 12(h).

Rule 12(h), however, "sets only the outer limits of waiver; it does not preclude waiver by implication." *Marquest Medical Prods., Inc. v. Emde Corp.*, 496 F.Supp. 1242, 1245 n. 1 (D.Colo.1980); *cf. also United States v. Gluklick*, 801 F.2d 834, 837 (6th Cir.1986) (" '[I]n personam jurisdiction may be obtained by actions of a party amounting to a waiver, and a court has jurisdiction to enter an order finding a waiver.' "), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1376, 94 L.Ed.2d 691 (1987). Even when a defendant has asserted a lack of personal jurisdiction in an answer, "[t]here are limits in the extent to which a defendant can actively litigate a case without waiving defenses of personal jurisdiction and improper venue." *Reliable Tire Distrib., Inc. v. Kelly Springfield Tire Co.*, 623 F.Supp. 153, 155–56 (E.D.Pa.1985); *cf. also Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 997 (1st Cir.1983) ("[I]f defendant appears, a subsequent contest of the court's jurisdiction must be timely."). As the court explained in *Burton v. Northern Dutchess Hosp.*, 106 F.R.D. 477 (S.D.N.Y. 1985), "by asserting the defense of lack of [personal] jurisdiction in their answers[,]" the defendants "do not preserve the defense in perpetuity." *Id.* at 481.

In this case, I believe that Dr. McGee and the Center have waived the defense of personal jurisdiction by failing to seek dismissal on that basis until after the jury returned an adverse verdict as to liability. By delaying his challenge to personal jurisdiction, Dr. McGee has received two opportunities to litigate the question of liability on the merits. He has defended on the merits in Ohio and lost, but his subsequent attack upon the district court's exercise of personal jurisdiction, which has resulted in the invalidation of the verdict in favor of

---

**1.** The Center did mention the absence of personal jurisdiction in the course of moving for a directed verdict, but did not formally pursue the issue at that juncture because the district court commented that Oral Roberts' solicitations should be attributed to the Center for the purpose of personal jurisdiction.

the plaintiff, forces the plaintiff to file a second action (presumably in Oklahoma) in order to obtain redress.[2] I find this sort of gamesmanship impermissible, and would therefore hold that waiver prevents a defendant from raising the issue of personal jurisdiction once a determination of liability on the merits is reached.

---

**2.** Such delayed motions generate difficulties above and beyond impairment of the efficient operation of the judicial system. As the First Circuit has observed, permitting defendants to file delayed motions for dismissal based upon the absence of personal jurisdiction may create statute of limitations problems for plaintiffs whose original actions are dismissed years after commencement in response to such motions. *See Marcial Ucin,* 723 F.2d at 997.