[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the court on defendant Pawtucket Memorial Hospital's motion for summary judgment pursuant to Super. Ct. R. Civ. P. 56. The plaintiff has filed a timely objection to the defendant's motion.
On January 2, 1987, plaintiff Eleanor Silvestri sought treatment at defendant Pawtucket Memorial Hospital for a laceration of her right forearm.[1] Dr. Gary Whitman repaired the plaintiff's forearm, which had been cut by broken glass. Dr. Whitman did not, however, x-ray the plaintiff's arm prior to surgery. Subsequently, the wound became infected. An x-ray performed on March 29, 1988 revealed broken glass still in the wound. Another surgeon, not a party to this action, later removed the glass.
At the time of the incident, Dr. Whitman had Emergency Room staff privileges at Memorial Hospital, but he was not an employee of the Hospital. Spectrum Emergency Care, Inc., ("Spectrum") which was under contract with Memorial Hospital to provide physicians to staff the emergency room, employed Dr. Whitman.
On December 26, 1989, the plaintiff filed her complaint, alleging that medical conditions at the hospital were substandard and that she suffered injuries as a result of the lack of due care. The defendant answered the complaint on January 30, 1990. On June 14, 1991, the defendant moved for summary judgment pursuant to Rule 56. The plaintiff filed a timely objection.
Rule 56(c) of the Superior Court Rules of Civil Procedure empowers a trial justice, upon proper motion, to enter summary judgment in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." When passing on a motion for summary judgment, the only question before the trial justice "is whether there is a genuine issue as to any material fact which must be resolved." Rhode Island Hospital TrustNational Bank v. Boiteau, 119 R.I. 64, 66, 376 A.2d 323, 324 (1977); see also Trend Precious Metals Co. v. Sammartino,Inc., 577 A.2d 986, 988 (R.I. 1990); Banks v. Bowen's LandingCorp., 522 A.2d 1222, 1224 (R.I. 1987). "When determining whether any genuine issue of material fact exists, the trial justice . . . views the pleadings, affidavits, and other relevant documents in the light most favorable to the opposing party."Mullins v. Federal Diary Co., 568 A.2d 759, 761 (R.I. 1990). The party against whom the motion for summary judgment is filed "bears the burden of proving, with competent evidence, the existence of a factual dispute." Trend, 577 A.2d at 988,Mullins, 568 A.2d at 761. However, because summary judgment is an extreme remedy, it must be applied cautiously. Trend, 577 A.2d at 988; Mullins, 568 A.2d at 761.
The defendant's argument for summary judgment runs as follows. Dr. Whitman served as an independent contractor physician. As a matter of law, hospitals are not liable for the acts or omissions of independent contractors. The hospital's entire potential liability stems from Dr. Whitman's acts or omission. Therefore, the defendant cannot be held liable to the plaintiff.
To prove that Dr. Whitman is an independent contractor, the defendant relies upon the testimony of Betsy Brenner, the hospital's risk manager since December, 1990. Ms. Brenner's affidavit states that Dr. Whitman was not an employee of the hospital on or about January, 1987. (Brenner Aff. paragraph 5). From this testimony, the defendant concludes that "Dr. Whitman was, in fact an independent contractor physician exercising autonomous professional judgment and control in the assessment of the patient and administration of emergency medicine care." (Def. memorandum at 2.)
The defendant's conclusion as to Dr. Whitman's independent contractor status runs contrary to certain language in an agreement between Spectrum and the Hospital. Paragraph 5 of the agreement reads as follows:
 5. The relationship between Corporation and the physicians provided under this Agreement will be that of independent contractor. In no way shall Corporation be considered or deemed to be engaged in the practice of medicine. Corporation shall not exercise control of any nature, kind or description relating to the manner of means in which the physicians perform the duties and provide emergency department coverage. The professional medical services of each physician rendering services at Hospital shall, while rendering such services, be under and subject to the general supervision of the Hospital Medical staff. (emphasis added)
While the first sentence of the paragraph labels the physician an independent contractor, the last sentence suggests that Pawtucket Memorial exercises considerable control over its emergency room doctors. Doctors such as Whitman could not, as the defendant contends, "exercise autonomous control over emergency medical care" because the hospital still supervises them. Thus, the court finds that a dispute of material fact as to the status of Dr. Whitman as an independent contractor exists.[2]
The court further finds that although the doctor may not have been an employee of the defendant, the relationship between the two parties may have been that of principal and agent. Agency is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Lawrence v. Anheuser-Busch, Inc., 523 A.2d 864, 867 (R.I. 1987) (Quoting from Restatement (Second) Agency 1(1) (1958)). Therefore, the following three elements are required to show the existence of an agency relationship: (1) a manifestation by the principal that the agent will act for the principle, (2) consent by the agent to the undertaking; and (3) an agreement between the parties that the principal shall control the undertaking. In the relationship the principal must have the right to control the work of the agent, McLaughlin v. Chicken Delight, Inc.,164 Conn. 317, 322, 321 A.2d 456, 459 (1973); Arcell v. AshlandChemical Co., 152 N.J. Super. 471, 494, 378 A.2d 53, 65 (1977); and the agent must act primarily to benefit the principal.Narragansett Wire Co. v. Norberg, 118 R.I. 596, 605,376 A.2d 1, 5 (1977). Based on the agreement between Spectrum and the defendant, the court finds that a genuine issue of material fact exists as to whether or not Dr. Whitman is an agent of the hospital.
Even if the court were to agree that Dr. Whitman is an independent contractor, it need not follow as a matter of law that the hospital is resolved of all liability from his acts or omissions. The court is well aware of the general rule in Rhode Island that "one engaging an independent contractor to perform work is not liable for the negligent acts of the contractor or his employees in performing the work contracted for." BalletFabrics Inc. v. Four Dee Realty Co. Inc., 112 R.I. 612, 617, 314 A.2d 3, 4 (1974). The court notes, however, that the rule has numerous exceptions. The Restatement, for example, devotes twenty sections to such exceptions. See 2 Restatement (Second) Torts §§ 410-429 (1965). Of particular interest to the present case is Section 427 — Negligence as to Danger Inherent in the Work which reads as follows:
 One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to, such others by the contractor's failure to take reasonable precautions against such danger.
In Rhode Island, an employer has been held liable for the torts of his independent contractor when the work involved was: (1) subject to a non-delegable duty; Webbier v. ThoroughbredRacing Protective Bur. Inc., 105 R.I. 605, 254 A.2d 285 (1969); (2) by its very nature likely to cause harm without proper precautionary measures; Sroka v. Halliday, 39 R.I. 119, 92 A. 965 (1916); and (3) unquestionably inherently dangerous. Blountv. Fong, 48 R.I. 453, 138 A. 52 (1927).
The hospital relies primarily upon Berarducci v. RhodeIsland Hospital, 459 A.2d 963 (R.I. 1983) for the proposition that the hospital is not liable for the negligent acts of an independent contractor. That case, however, did not involve an emergency room situation but rather a pre-scheduled, herniated bladder repair which took place in a hospital operating room. Because the patient knew in advance she needed to have the operation, she had ample time to inquire into the doctor's skill and qualifications and choose a physician. In the instant case, the patient sought the emergency room for treatment; no opportunity existed for Silvestri to choose a physician. The plaintiff came to Pawtucket Memorial's emergency room because the hospital held itself out as providing these services and not because a specific doctor practiced there.
The agreement between Spectrum and Pawtucket Memorial clearly indicates that the hospital sought to hold itself out as a provider of quality emergency care: Paragraph 4(g) of the agreement states:
 Corporation [Spectrum] will provide consultation or make available to Hospital and Hospital's Medical Director various resources regarding the emergency department, which may include — — Assisting the Hospital in the development and implementing a public relations program to help stimulate an increased sense of confidence within the community regarding the availability of quality medical services in the emergency department.
Thus, the hospital not only held itself out as providing emergency room care but also sought to create a sense of confidence in the community about the quality of medical services in its emergency department.
While no reported Rhode Island case squarely on point exists, the court notes with approval a line of cases from other jurisdictions that hold a hospital which holds itself out as a provider of emergency room care cannot resolve itself of liability by using an independent contractor physician. See 51 A.L.R. 44th 271-276 (1987); Street v. Washington HospitalCenter, 558 A.2d 690, 692 (D.C. App. 1989); Pamperin v. TrinityMemorial Hospital, 423 N.W.2d 848 (Wis. 1988); Irving v.Doctors Hospital of Lake Worth, Inc., 415 So.2d 55 (Fla. App. 1982); Stewart v. Midani, 525 F. Supp. 843 (1981 N.D. Ga.).
Of special interest to the instant case is Hardy v.Brantly, 471 So.2d 385 (Miss. 1985). Hardy involved a medical malpractice case in which a physician was sued for failure to diagnose a perforated ulcer of a patient who came to an emergency room for treatment of severe abdominal pain. The physician was provided to the hospital by Hinds Emergency Group [HEG], a company which hired out physicians as independent contractors to hospitals. Thus, the relationship between HEG and the hospital to which it supplied physicians is analogous to that of Spectrum and Pawtucket Memorial. The Hardy court held that:
 Where a hospital holds itself out to the public as providing a given service, in this instance, emergency services, and where the hospital enters into a contractual arrangement with one or more physicians to direct and provide the service, and where the patient engages the services of the hospital without regard to the identity of a particular physician and where as a matter of fact the patient is relying upon the hospital to deliver the desired health care and treatment, the doctrine of respondeat superior applies and the hospital is vicariously liable for damages proximately resulting from the neglect, if any, of such physicians. By way of contrast and distinction, where a patient engages the services of a particular physician who then admits the patient to a hospital where the physician is on staff, the hospital is not vicariously liable for the neglect or defaults of the physician. 471 So.2d at 371.
The court made the above ruling in spite of the following clause in the contract between HEG and the hospital: "The hospital shall neither have nor exercise any control over the methods by which the Hinds Emergency Group [physician provider] or its contractor physician shall perform their professional work and function." Id. at 362. In the instant case, where Pawtucket Memorial agrees to control and supervise the physicians, an even stronger case can be made that Pawtucket Memorial should be liable for negligence, if any, which occurs in its emergency room.
In Smith v. St. Francis Hospital, Inc., 676 P.2d 279 (Okl. App. 1983), a suit against a hospital was based upon the emergency room physician's failure to diagnose correctly a patient's appendicitis which led to its rupture. As in the instant case, the hospital had contracted with a group of emergency room physicians organized as Emergency Care, Inc. (ECI) to staff the hospital's emergency room and provide emergency health care services. The physician responsible for the misdiagnosis was technically employed by ECI. In the face of the hospital's claim that the physician was an independent contractor, the Smith court held
 [T]he hospital must be held accountable for the negligence, if any, of its authorized emergency room physician regardless of whether or not he is an independent contractor by secret limitations contained in private contract between the hospital and doctor or by virtue of some other business relationship unknown to the patient and contrary to the hospital's conduct and representations. 676 P.2d at 283.
Further, the court notes that Restatement (Second) of Torts § 429 (1966) provides:
 One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.
Thus, this court is not convinced that as a matter of law that even if Dr. Whitman were an independent contractor Pawtucket Memorial Hospital would be absolved of all liability for acts or omissions occurring during emergency room care.
Finally, the court notes that the defendant has not answered the plaintiff's interrogatories which were propounded on March 7, 1991. Interrogatory No. 6 asks for the names of all medical personnel involved in the treatment of the patient on the January 2, 1987 and a description of the extent of their involvement. Answers to this interrogatory may show that additional hospital personnel or employees took part in the operation. The court finds that a factual dispute may exist as to the involvement of additional hospital personnel in the case of plaintiff.
For the reasons stated above this court denies the defendant's motion for summary judgment.
Counsel shall prepare an order to reflect the above disposition.
[1] Pawtucket Memorial Hospital is now known as the Memorial Hospital of Rhode Island.
[2] The court also notes that the hospital has failed to reply to the plaintiff's interrogatories on March 7, 1991. These interrogatories raise questions about the amount of control the hospital exercises over emergency room physicians and the independent contractor stated by Dr. Whitman.