## REEVES v. NOBLE.

No. 11073—Opinion Filed Jan. 30, 1923.

(Syllabus.)

### 1. Banks and Banking — Organization—Stock.

Under section 257, Rev. Laws 1910, a state bank in process of organization has a right to receive the par value of any portion of its stock from its subscribers or intended stockholders before it opens for business, or is authorized by the Bank Commissioner to engage in the banking business. By receipt thereof, the stock thereby becomes fully paid.

### 2. Same.

Plaintiff in error and his father, intending to become the owners of 35 shares of stock in the Citizens' State Bank of Tulsa, then in process of organization, borrowed from the Producers' State Bank of Tulsa, a going concern, $3,500, for which Liberty

Bonds to the same amount were deposited as collateral, and caused said amount to be placed to the credit of the said Citizens' State Bank. After it opened and was doing a general banking business, the said bank entered into an arrangement by which it took over the Liberty Bonds deposited with the Producers' State Bank to the amount of the stock, and by which $20 a share in excess of par was paid by the intended stockholders for the stock before the delivery of the certificates. There is nothing in this transaction which rendered a note of $500 given to effectuate the full payment void, or make the delivery of the stock certificate violative of section 39, article 9, of the Constitution.

### 3. Same—Action—Parties—Agent.

Charles F. Noble, as liquidating agent of the Citizens' State Bank of Tulsa, Oklahoma, insolvent, sues on a promissory note, an asset of said bank. The record shows that the said plaintiff did not purchase said note, and that he had no interest therein as an individual, but that he was appointed by the Bank Commissioner of the State to look after and wind up the affairs of the said bank. Having no interest in the note sued on, either by contract of the parties or by the operation of law, the plaintiff could not maintain the action in his own name as liquidating agent. But the record showing this is an action in which the state is the proper party plaintiff, and no injustice can be done, the judgment will be affirmed with the correct plaintiff substituted.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by Charles F. Noble, Liquidating Agent of Citizens' State Bank, against W. A. Reeves on promissory note. Judgment for plaintiff, and defendant apppeals. Affirmed.

Randolph, Haver & Shirk, H. M. Gray, and C. E. Cooper, for plaintiff in error.

Horace Speed, for defendant in error.

BRANSON, J. The Citizens' State Bank of Tulsa, Oklahoma, organized under the banking laws of the state of Oklahoma, opened for business on the 2nd day of January, 1918, in said city. It was incorporated with a capital stock of $125,000, the par value of each share of stock being $100. The plaintiff in error, W. A. Reeves, who will be referred to herein as the defendant, along with his father, entered into negotiation with the organizers of said bank, the latter part of December, 1917, with the view of acquiring 35 shares of the capital stock of said bank. The defendant and his father, prior to the 1st of January, 1918, went to the Producers' State Bank in the city of Tulsa, and there negotiated a loan with said Producers' State Bank in the sum of $3,500,

the said defendant and his father executing a note to the Producers' State Bank, and giving as collateral therefor $3,500 par of Liberty Bonds, $500 of which was the property of the defendant and $3,000 of which the property of his father. The proceeds of said loan were placed to the credit of the Citizens' State Bank of Tulsa. In the language of the testimony of the defendant: "That was just prior to the opening of the bank; about three days, as near as I can remember." Two or three days after the Citizens' State Bank opened for business, as testified to by the plaintiff, the defendant received a check from James Bowen, president, in the sum of $3,500, made payable to the Producers' State Bank, and drawn by the said James Bowen on the said Citizens' State Bank of Tulsa. With this check the said note executed to the Producers' State Bank by the defendant and his father in the sum of $3,500 was paid, and the bonds theretofore hypothecated with the Producers' State Bank were turned over to the said James Bowen, or the Citizens' State Bank. On said date the said defendant executed the note sued on herein, due and payable 120 days after date. Defendant received a stock certificate issued to himself, showing the ownership of 10 shares of the capital stock of the Citizens' State Bank, his father receiving 25 shares. On May 10, 1918, the defendant paid the interest on his said $500 note, and extended the 'same to June 3, 1918. On the morning of May 29, 1918, the State Bank Commissioner, finding said bank in an insolvent and failing condition, took charge thereof, as provided by the banking law of the state of Oklahoma, and among other assets found in said bank, was the said note of the defendant herein.

The American National Bank of Tulsa was organized and opened for business only a short time after the said Citizens' State Bank was taken over by the Bank Commissioner, and the assets of the said Citizens' State Bank were turned over to the said American National Bank for collection, but the national banking officers having objected to this, the assets of the Citizens' State Bank were delivered under authority of the Bank Commissioner of the state of Oklahoma to one Charles F. Noble, the defendant in error herein, who was to act as liquidating agent in winding up the affairs of the said Citizens' State Bank. While in its possession, the American National Bank brought suit against the defendant, W. A. Reeves, but before trial, the said Charles F. Noble, liquidating agent as aforesaid, was substituted as party plaintiff.

The petition is an ordinary declaration on promissory note, in which the plaintiff sought to recover against the defendant, W. A. Reeves, plaintiff in error herein, the sum of $500, interest, cost, etc. To this petition the defendant filed his answer, in which, among other things, he said that the said note was executed to the Citizens' State Bank for and in payment of 5 shares of the capital stock of said bank, and that said certificate was null and void, and this defendant did not acquire said 5 shares of capital stock of said Citizens' State Bank, and never received any consideration for the aforesaid promissory note, and that said promissory note was at the time of the delivery and now is null and void, and further pleading in his amended answer, that "Charles F. Noble has no legal right or authority to maintain this action, has no right, title or interest in or to the note described in plaintiff's petition, and that this defendant is not indebted to said Charles F. Noble in any manner or in any amount."

When the cause came on for trial, both the plaintiff and the defendant waived a jury, and the same was tried to the court, and on the 29th day of May, 1919, a judgment was entered by the court, finding generally in favor of the plaintiff and against the defendant, from which this appeal was taken.

For reversal of this case, the plaintiff in error says:

"1st. The sale of the stock for the unsecured promissory note of the purchaser was void. The stock issued to him was void, and hence the note was wholly without consideration.

"2nd. The plaintiff was without capacity to maintain this suit. The note sued on was not his note, and there is no authority or law for him to maintain suit thereon."

The defendant contends that under article 9, section 39 of the Constitution of Oklahoma, which provides:

"No corporation shall issue stock, except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increase of stock or indebtedness shall be void, and the Legislature shall prescribe the necessary regulations to prevent issue of fictitious stock or indebtedness"

—that the stock certificate issued to the defendant, plaintiff in error herein, and which he still owns, was a nullity, and that it constituted no consideration which would support the promise of the defendant to pay the said $500 evidenced by his said prom-

issory note, taking the position that the note is "not property actually received to the amount of the par value of the stock," and was issued in contravention of section 260, Rev. Laws 1910, providing, "The capital stock of banks organized under provisions of this article shall be in all cases fully paid up."

In the case of Harn v. Smith, 85 Okla. 137, 204 Pac. 642, this court held that a note secured by mortgage on real estate was property within the meaning of the constitutional provision above quoted, but neither the plaintiff in error nor the defendant in error point out any case decided by this court in which it is held that an unsecured promissory note is property actually received within the meaning of the above quoted provision of the Constitution. We do not think it necessary to pass on this question in determining whether or not the note sued on is an enforceable obligation against the defendant. Section 260, Rev. Laws 1910, as quoted by the plaintiff in error in his brief, provides:

"The capital stock of banks organized under provisions of this article shall be in all cases fully paid up, etc."

Section 257, Rev. Laws 1910, prescribing the manner of organizing state banks and securing the execution of articles of incorporation, the filing thereof with the Secretary of State, providing that the certificates of the Secretary of State shall be filed with the Bank Commissioner of the state, says:

"Provided that such banks shall transact no business except the election of officers and the taking and approving of their official bonds, the receipt of payment on account of subscriptions of its capital stock, and such other business as is incidental to its organization, until it shall have been authorized by the Bank Commissioner to commence the business of banking as hereinafter provided."

Section 258, Rev. Laws Okla. 1910, provides in part:

"When the capital stock of any bank shall have been paid up, the president or cashier thereof shall transmit to the Bank Commissioner a verified statement, showing the names and places of residence of the stockholders, the amount of stock subscribed, and the amount paid in by each, and the Bank Commissioner shall thereupon have the same power to examine into the condition and affairs of such bank as if it had before that time been engaged in the banking business; and if the commissioner is satisfied that such bank has been organized as prescribed by law, and that its capital is fully paid, and that it has in all respects complied with the law, he shall issue to such bank under

his hand and seal a certificate showing that it has been organized, and its capital paid in, as required by law, and is authorized to transact a general banking business," etc.

The plaintiff in error testified, in substance, that the last of December, 1917, he and his father borrowed from the Producers' State Bank of Tulsa, the sum of $3,500, giving as collateral therefor Liberty Bonds to the same amount, and that the proceeds of said loan were placed to the credit of the Citizens' State Bank then in process of organization. There is nothing in the record which discloses that any part of the provisions of the above quoted statutes governing the organization of state banks, such as the filing of the statement showing the capital stock fully paid with the Bank Commissioner, was not actually complied with. But on the contrary, the testimony of the plaintiff in error showed that an amount of $3,500, which was the full amount of the par value of the stock he and his father were to receive, was actually deposited in the Producers' State Bank, a going concern, to the credit of the Citizens' State Bank, in process of organization. This amount became the property of the Citizens' State Bank, and was a payment to the Citizens' State Bank of the par value of the 35 shares of stock the plaintiff in error and his father expected to receive in said bank.

In the absence of proof to the contrary, the duties imposed upon public officials and officers of a corporation will be presumed to have been complied with, as provided by the law. The record discloses that the plaintiff in error negotiated the purchase of the stock, which he and his father were to receive, with one James Bowen, who became the president of said Citizens' State Bank. Said note of defendant and his father at the Producers' State Bank was paid by check, drawn on the Citizens' State Bank of Tulsa, by James Bowen, the president, and at the time of paying said note, the bonds theretofore with the Producers' State Bank were turned over to the said James Bowen, or the Citizens' State Bank.

The Citizens' State Bank, having received $3,500 for 35 shares par value of its stock, the stock thereby became fully paid, and there is nothing in the constitutional provisions cited by plaintiff in error, nor in the statutes above quoted, which would necessarily inject into the issue involved in this suit the question as to the issuance of stock for which money or property of the par value of the stock had not been received by the corporation. The corporation having received the par value of the stock, the man-

ner and method of paying $20 per share above par under their agreement with the said James Bowen is immaterial. Bowen, whether for himself or for the benefit of the bank, which does not clearly appear from the record, was requiring an amount to be paid of $20 a share over and above the par value, which on 35 shares would amount to $700, and this note was executed to the bank, and the check for $200 was given.

There is nothing wrong or uncommon in having the paid-up capital of a proposed new bank put to the credit of such proposed bank in a going concern, as was done in this case, in so far as the stock which plaintiff in error and his father expected to receive in the new institution was concerned. The plaintiff in error vigorously contends that the above cited provision of the Constitution has been violated and that the issuance of the stock constitutes no consideration to support the note in question. Not believing that the decision of this question by the trial court was necessary to support the judgment, this court does not feel it necessary to pass upon it now, but had that been the question on which the decision of the lower court was based, there appears to be no compelling reason in the authorities or otherwise why the delivery and acceptance of a note in good faith could not be treated in effect as an agreement to pay for so much of the capital stock of the proposed corporation, and enforceable as such. The mere fact that the corporation might have wrongfully issued the stock certificate, and the plaintiff in error received that for which the subscription was made, would not in the least taint the contract with evil. The wrong which the constitutional provision undertook to prevent was the issuance of the stock without receipt of the money or property of the value of the stock, and the mere fact that the plaintiff in error might have already received, without paying for, that which he agreed to take and pay for, we doubt could avail him as a defense to the note. Schiller Piano Co. v. Hyde (S. D.) 162 N. W. 937; Harvey Watts v. Worcester Co., 193 Mass. 138, 78 N. E. 886; Hacker v. Natl. Oil Ref. Co., 73 Pa. 93; Clark v. Lexington Stove Works (Ky. App.) 73 S. W. 788; Goodrich v. Reynolds, 31 Ill. 490, 83 Am. Dec. 240; Williams v. Brewster, 117 Wis. 370, 93 N. W. 479.

It would follow therefore that the judgment of the trial court is amply sustained by the records, if the second contention of plaintiff in error is not well taken.

There is no such officer known to the laws of this state as a "liquidating agent." The

use of this term after the name of the defendant in error is only descriptive of his purpose and duties touching the insolvent corporation. The defendant in error could have been nothing more than a representative or agent of the State Bank Commissioner or Banking Board. He holds no office whch is charged by law with the duty of collecting the assets of an insolvent state bank. The statute nowhere gives such a designated person any interest in the assets of a failed bank, either as an officer or as an individual. Ordinarily, an agent can maintain a action for his principle in his own name only when the contract is made in the name of the agent. This principle is incorporated in section 4683, Rev. Laws Okla. 1910. Crescent Furniture & Lumber Co. v. Radatz, 28 Mo. App. 210; Draper v. Farris, 56 Mo. App. 417; Chin Kem You v. Ah Joan, 75 Cal. 124, 16 Pac. 705; Mitchell v. St. Mary, 148 Ind. 111, 47 N. E. 224; Rawlings v. Fuller, 31 Ind. 255.

The defendant in error in his brief, able on other questions discussed, makes only a general argument in support of his contention that the defendant in error could maintain this action. The defendant in error brought this suit, as the record shows, for the purpose of carrying out a duty imposed by the law upon the Bank Commissioner of the state in the administration of the State Banking Department, to wit, the duty to collect the assets of an insolvent state bank for the benefit of those entitled to receive the same.

Under statutes allowing amendments in the discretion of court, however, such as ours (section 4790, Rev. Laws 1910), the court may permit the substitution of a new plaintiff—a competent plaintiff substituted for an incompetent one. Bedard v. Mamoney (R. I.) 76 Atl. 113; Noziska v. Aten (S. D.) 152 N. W. 694, 64 Am. Dec. 64; Crary v. Kurtz (Iowa) 105 N. W. 590, 50 Am. St. Rep. 726 and note, citing authorities on page 741.

In Ruling Case Law, vol. 20, page 698, we find:

"No amendment of any pleading nor the filing of any additional pleading is required when the pleadings already filed state the cause of action or defense for or against the party substituted, and as a general rule, the substituted party takes up the prosecution or defense at the point where the original party left it, assuming the burdens, as well as receiving the benefits." Fish v. Smith, 73 Conn. 377, 47 Atl. 711, 84 A. S. R. 161.

We are not unaware that ordinarily a change or substitution of party plaintiff is

made on motion, but in a case such as the one now under consideration, where it is apparent that the so-called liquidating agent sues in his own name, and the record discloses that his only purpose and object is to do that which the law imposes upon the Bank Commissioner of the state, under sections 303 and 304 of Rev. Laws 1910, and that the proceeds arising from whatever judgment might be obtained will be disposed of under the direction of the Bank Commissioner or the Banking Board, and the cause of action pleaded by the plaintiff shows only, as a matter of law, a right of action in the name of the state on the relation of the Bank Commissioner, under said sections 303 and 304, Rev. Laws Okla. 1910. and since the cause has been tried on its merits and a retrial would only work unnecessary delay and trouble upon the parties, the judgment will not be reversed, but the petition will be treated as amended here. Bailey v. Lankford, 54 Okla. 692, 154 Pac. 672; Dolezal, County Clerk, et al. v. Bostick, County Attorney, 41 Okla. 743, 139 Pac. 964.

The judgment of the lower court is affirmed, with the State of Oklahoma, on relation of the Bank Commissioner, substituted as party plaintiff in lieu of Charles F. Noble, liquidating agent.

JOHNSON, V. C. J., and KANE, McNEILL, KENNAMER, NICHOLSON, COCHRAN, and HARRISON. JJ., concur.