Frank CALVERT and Gilda Calvert, as parents and heirs of LaQuita Calvert, a deceased minor child, and Frank Calvert and Gilda Calvert, individuals, Appellants,

v.

TULSA PUBLIC SCHOOLS, INDEPENDENT SCHOOL DISTRICT NO. 1 OF TULSA COUNTY, Oklahoma, an Oklahoma political subdivision, Appellee.

No. 85045.

Supreme Court of Oklahoma.

Sept. 24, 1996.

Clark O. Brewster, John W. Anderson, Jr., Brewster, ShallCross & Deangelis, Tulsa, for Appellants.

Frederick J. Heganbart, Rosenstein, Fist & Ringold, Tulsa, for Appellee.

SUMMERS, Justice:

The case turns on whether the Plaintiffs, parents of a deceased child, may proceed with their suit against the School District in the District Court. The trial court, and the Court of Appeals, took the position that the parents' failure to have themselves appointed as personal representatives of their daughter's estate until after the running of the statute of limitations was fatal to their claim, even though the parents had otherwise timely brought the suit. Corollary to the issue is whether the parents' notice to the School District was sufficient under the Governmental Tort Claims Act. We reverse, and allow the action to proceed.

Ten-year old LaQuita Calvert died of a severe asthma attack while at school. In their capacity as parents and heirs of LaQuita, Plaintiffs brought suit against the School District under the Governmental Tort Claims Act for her death, claiming that LaQuita's requests for assistance immediately prior to her death were ignored by school officials. The School District filed a motion for summary judgment. It urged that the parents were not the proper parties to bring the action, and that the Governmental Tort Claims Act required that the suit be brought by an administrator or personal representative. About a year and a half after the death of LaQuita, and after the filing of this case, the parents were appointed as personal representatives. After their appointment as personal representatives the Calverts filed a motion to amend their original petition, to show their status as such.

The District Court denied the motion to amend and granted summary judgment in favor of the School, holding that only an administrator or personal representative could bring suit under the Governmental Tort Claims Act. Because the parents had not been appointed by a court as personal representatives until after the time limit had run for bringing an action under the Act, that Court held the suit was barred.

The Court of Appeals, in an opinion designated for publication, affirmed. In so holding, the appellate court stated that while liberal substitution of plaintiffs is favored in Oklahoma, the restrictive language of the Governmental Tort Claims Act prohibits the substitution of parties after the time limit for filing an action has passed. We have granted certiorari. The issues before us are (1) whether plaintiffs had standing under the Governmental Tort Claims Act to bring this suit, (2) whether plaintiffs' motion to amend was properly denied and (3) whether the notice given to defendant School was sufficient to meet notice requirements.

██ The Governmental Tort Claims Act is the legislative abrogation of sovereign immunity. *Anderson v. Eichner*, 890 P.2d 1329, 1336 (Okla.1994). To the extent and manner described in the Act, governmental entities can be held responsible for all torts for which a private person or entity could be held

responsible. *Id.;* 51 O.S. 1991 § 153(A). Section 164 of the Act states that Oklahoma's Rules of Civil Procedure as well as other laws and statutes shall apply as long as they are not inconsistent with the Act.

The Act defines a "claimant" to include:

"Claimant" means the person or his authorized representative who files notice of a claim in accordance with this act. Only the following persons and no others may be claimants:

\* \* \* \* \* \*

c. in the case of death, an administrator, special administrator or a personal representative who shall aggregate in his claim all losses of all persons which are derivative of the death.

51 O.S. 1991 § 152(4)(c). We agree that Section 152 defines and limits those persons entitled to bring an action against a governmental entity. The question becomes whether the Calverts fell within this definition.

■ Because the Act itself does not define the term "personal representative" as used in Section 152(4)(c), we look to other statutes for guidance in light of Section 164's mandate that other laws apply as long as they are not inconsistent. Title 58 O.S. 1991 § 11 defines "personal representative" to include not only persons serving as executors, administrators, conservators, administrators with will annexed and guardians, but also "persons who perform substantially the same function under the law governing their status." Thus, "personal representative" includes court-appointed representatives, but it also embraces those persons serving in a similar function under the law as those who were court-appointed.

■ In the present case, there is no dispute that the Calverts were the parents, heirs and guardians of LaQuita before her death. After her death they were taking care of her affairs. They were eventually appointed as her personal representatives. *Prior to their appointment, they were performing the functions of a personal representative.* While we agree that court-appointment is the preferable way to proceed in order to be a personal representative, we hold that, in light of the fact that the individuals in question were the parents of the deceased minor and were later appointed as personal representatives, this is sufficient to fall within the definition of Section 11.

The New Mexico Supreme Court reached a similar result in *Chavez v. Regents of the University of New Mexico,* 103 N.M. 606, 711 P.2d 883 (1985). There the natural parents of a deceased minor brought suit under New Mexico's version of the Governmental Tort Claims Act. The parents did not secure an appointment as personal representatives until after the time limit had expired for bringing the claim. The New Mexico act provided that a wrongful death action could be brought by a personal representative or a person claiming benefits of the proceeds from a wrongful death action. The Supreme Court acknowledged that the Act itself did not define "personal representative." The Court then looked to the statutory definition of "personal representative" as found in the Probate Code, and determined that the term "personal representative" included *persons who perform substantially the same function under the law governing their status.* The parents of the deceased minor were acting in the capacity of personal representatives and were thus permitted to bring the claim. *See also Knapp v. U.S.,* 844 F.2d 376 (6th Cir. 1988). *Chavez* is very persuasive, as New Mexico's definition of "personal representative" mirrors that of Oklahoma.

The School relies on *Moon v. Ellis,* 677 P.2d 668 (Okla.Ct.App.1984). There a wrongful death action was brought by the daughter of the deceased. The defendant demurred, asserting that the daughter was not the proper party to bring the action, as she was neither the spouse nor the personal representative. The Court of Appeals agreed with the defendant, and held that the daughter could not bring the action. Because this opinion failed to consider the statutory definition of "personal representative", and because the court failed to consider the purpose behind notice requirements, opting instead to rely on a hypertechnical construction of statutes, we decline to follow its reasoning. Further, the case was decided prior to the enactment of the current Oklahoma Pleading Code, which encourages the liberal

substitution of parties. 12 O.S. 1991 2017. The law of *Moon* is not consistent with our current practice.

■ The Calverts filed a motion to amend their petition shortly after they were appointed as personal representative. Our resolution of the first issue permits the Calverts to continue with their claim, regardless of when they became the court-appointed personal representatives. However, assuming for the sake of argument that the Calverts did not fall with the statutory definition, we nonetheless find that they may proceed. The Governmental Tort Claims Act specifically expresses the intent that Oklahoma procedural rules shall apply unless in conflict with the Act. Title 12 O.S.Supp.1993 Section 2015 permits amendments when the claim or defense arose out of the conduct set forth in the original pleading. Section 2017 furthers this liberal substitution of parties by stating that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed ... for substitution of the real party in interest." Permitting substitution of parties in this circumstance does not conflict with the Act or its purposes.

In *Chavez*, 711 P.2d at 888, the New Mexico Supreme Court also addressed this question. The Court there held that when an amendment is made after the applicable limitations period has run, courts generally look to the facts to ascertain whether the amendment would conform to notice requirements. When there is no change in parties, but merely a change in capacity of the parties, relation back is permitted, because all parties were on notice of the claim and the facts from which it arose. *See also Annot.*, 27 A.L.R.4th 198 (1984). Like *Chavez*, the present case involves a situation where there is no change of parties; there is only a change in the capacity in which the parties brought suit, and all parties were on notice of the claim and the facts under which it arose. The amendment did not change the character of the claim.

Recently, in *Weeks v. Cessna Aircraft Co.*, 895 P.2d 731 (Okla.Ct.App.1994), the Court of Appeals, in an opinion released for publication by this Court, faced a situation wherein a party (the mother of the deceased) other than the special administratrix brought suit for wrongful death. The Court noted Section 2017, and construed it to allow the liberal substitution of parties. The Court continued by holding that "[w]e do not believe that administrative requirements for filing a wrongful death action should override the substantive right of recovery of potential beneficiaries." *Id.* at 735. Substitution of parties was permitted.

As in *Weeks*, we see no reason to refuse the substitution of the Calverts in their capacity as personal representatives. Section 2017 permits substitution, especially when all parties remain the same. Here, the parties have remained the same. The substitution would merely permit the Calverts to be recognized in their capacity as personal representatives instead of their capacity as parents and heirs of LaQuita.

Finally, the School asserts that by failing to be appointed as personal representatives, the Calverts also failed to strictly comply with the notice and time requirements in the Act. Title 51 O.S.Supp.1992, Section 156 states that "any person having a claim against the state or political subdivision ... shall present a claim to the state or political subdivision for any appropriate relief...." These claims must be presented within one year. The School contends that because the Calverts were not appointed as personal representatives until after the one-year time limit had expired, the School's notice was inadequate and the Calverts were precluded from bringing action.

■ As we stated earlier, the Calverts were serving in substantially the same function as personal representatives. They were later appointed as personal representatives. Furthermore, they timely filed the claim against the School in their capacity as parents and heirs of LaQuita. The School was on notice of the claim made by the Calverts. The School does not deny that the Calverts followed the procedural rules of notice set forth in the Act.

In *Reirdon v. Wilburton Board of Education*, 611 P.2d 239 (Okla.1980), this Court was faced with the issue of whether strict

compliance with the notice requirements in the Act was required. There, a mother through her attorney sent a letter to the school stating that she intended to file suit against the school because of injuries caused to her son. The school contended that this letter was insufficient to comply with the Act. We disagreed, holding that substantial compliance with the notice requirements was all that was necessary. The school did not contend that it suffered any prejudice because of the method of notice of the claims. The school, being on notice via the letter, was given the opportunity to promptly investigate the matter.

Likewise, in *Walker v. City of Moore*, 836 P.2d 1289 (Okla.1992), we faced the issue of whether a spouse could file a derivative claim under the Governmental Tort Claims Act. There the husband gave notice of a claim under the Act. The wife did not give notice. Turning to the definition of claimant under Section 152 we noted that the wife's loss of consortium claim was only derivative, and must be considered in conjunction with the claims of the husband. We held that the wife was not required to give a separate notice under our rule of substantial compliance. The city had been given notice of the husband's claim. The city was also aware that all derivative claims, according to the Act, must be filed with the claim filed by the injured person. Emphasizing that the Act must not be construed to defeat its purpose of permitting recovery from governmental entities in certain circumstances, we held that the husband's notice was sufficient to give the city notice of the wife's derivative claim.

Similarly, in the present case the School has not alleged any prejudice. In fact, the School finds no fault with the notice given by the Calverts, except that they accomplished this notice in their capacity as parents and heirs of LaQuita, rather than as personal representatives. To accommodate the School on this issue would elevate form over substance, which we decline to do.

In *Conway v. Ohio Cas. Ins. Co.*, 669 P.2d 766 (Okla.1983), we stated that the underlying purposes of the statutorily—required notice are (1) to promote prompt investigations, (2) to provide early opportunity for correction of dangerous conditions, (3) to promote speedy and amicable settlements of claims and (4) to permit the governmental entity to prepare for fiscal consequences. In the present case none of these goals will be compromised by allowing the Calverts to continue with their claim. The School has been given notice of the claim by the people most properly capable of giving notice—LaQuita's parents. The School does not allege that the notice was inadequate in its description of events or that it was insufficient to give the School opportunity to promptly investigate and resolve the matter.

In conclusion, we hold that the Calverts fall within the statutory definition of "personal representative", and are thus the proper parties to bring this tort action. Even if they were not, we hold that the Oklahoma law permits the substitution of parties in a situation such as this. Finally, we hold that the Calverts substantially complied with the notice requirements of the Governmental Tort Claims Act.

The opinion of the Court of Appeals is vacated. The judgment of the District Court is reversed, and the case is remanded to the District Court of Tulsa County for further proceedings.

All Justices concur.