2011 OK 2

Elizabeth ROTH, as Personal Representative of the Estate of Geneva M. Roth, deceased, Plaintiff/Appellant/Counter–Appellee,

v.

MERCY HEALTH CENTER, INC., a/k/a Mercy Health System of Oklahoma, a/k/a Mercy Health Care Corporation, and James D. Dixson, M.D., Defendants/Appellees/Counter–Appellees.

No. 104, 984.

Supreme Court of Oklahoma.

Jan. 18, 2011.

Rick Bisher, Ryan, Bisher, Ryan, Oklahoma City, for Plaintiff Elizabeth Roth.

Chris L. Fox, Heron, Sweet, Fox & Trout, P.C., Oklahoma City, for Defendant Mercy Health Center.

Hilton H. Walters, Rife & Walters, Oklahoma City, and Alison A. Cave, Edmond, for Defendant James D. Dixson, M.D.

COLBERT, V.C.J.

¶ 1 This is a medical negligence and wrongful death action initiated by Plaintiff, as personal representative of the estate of her deceased mother. The Court of Civil Appeals affirmed the trial court's jury verdict in favor of Defendants, Mercy and Dr. Dixson. The inquiry in this appeal concerns the trial court's discretion in denying Plaintiff's first motion to amend.

## I. BACKGROUND AND PROCEDURAL HISTORY

¶ 2 On January 12, 2003, 80 year-old Decedent slipped and fell at Morrison Floral Company while attending a birthday party and fractured the femur bone in her leg. Decedent was taken to Mercy's emergency room and was admitted for evaluation and treatment. Dr. Dixson, a general internist and a hospitalist, was Decedent's attending physician and coordinated her care. On January 20, 2003, Decedent was sent to Advance Care Hospital for rehabilitation. Advance Care Hospital is a long-term acute care hospital located within Mercy's physical facility. While at Advance Care Hospital, Decedent developed an atrial-flutter (abnormal heart rhythm). On Decedent's behalf, Dr. Dixson consulted with Dr. Brook Scott, a private

practice cardiologist. Dr. Claude Nadeau, Dr. Scott's private practice partner, placed a pacemaker in Decedent and prescribed Betapace on February 10, 2003. Decedent went into respiratory distress on March 1, 2003, and was transferred to the ICU at Mercy. Decedent was diagnosed with congestive heart failure, pulmonary edema, and possible pneumonia. On March 2, 2003, Decedent experienced a cardiac arrest and was resuscitated. Dr. Kent Potts, a cardiologist, responded to the code blue and prescribed Amiodarone/Cordarone. Dr. Dixson then deferred administration of Amiodarone to Drs. Scott and Nadeau.

¶ 3 Decedent was discharged from Mercy on March 10, 2003. Dr. Dixson wrote an order for home health care. Dr. Scott wrote a discharge order for Amiodarone 400 mg "TID" (three times a day). Dr. Nadeau wrote a progress note recommending a tapering dose of Amiodarone. However, Dr. Nadeau's tapering dose was not implemented, and no order to change or counter Dr. Scott's discharge order was memorialized in the medical records. Dr. Dixson maintains he did not initiate treatment or make the decision to dose Decedent with Amiodarone; but relied on Dr. Scott's order and wrote the discharge prescription order for Amiodarone 400 mg TID.

¶ 4 From March 11, 2003, until March 21, 2003, Mercy At–Home provided daily home health care to Decedent. Mercy At–Home did not report any significant complications with her health. On March 23, 2003, Decedent became ill, fell, and was taken to Mercy's emergency room. She was admitted to Mercy and died April 11, 2003. Decedent was survived by her spouse, Lawrence K. Roth, and daughter, Elizabeth Roth.

¶ 5 On January 12, 2005, Plaintiff filed this action asserting medical malpractice and wrongful death claims against defendant Mercy, and a medical negligence claim against defendant Dr. Dixson, alleging Dr. Dixson breached the standard of care by overdosing her mother which caused pulmo-

nary toxicity and death. Plaintiff brought this action on behalf of herself, individually, and as personal representative of Decedent's estate exactly one year, nine months and one day after her mother's death, but within the two year limitation period in Okla. Stat. tit. 12, § 1053 (2001).

¶ 6 Mercy and Dr. Dixson answered the petition on January 27, and February 23, 2005, respectively, and raised Plaintiff's capacity to sue as an affirmative defense. Although the original petition identified Plaintiff as personal representative of her mother's estate, Plaintiff did not petition the probate court for appointment as Special Administrator/Representative of Decedent's estate until February 8, 2005. In fact, pursuant to Decedent's Last Will and Testament, Lawrence K. Roth was selected and previously served as the estate's personal representative in a separate negligence action.[1] Nevertheless, on March 1, 2005, the probate court issued an order appointing Plaintiff as Personal Representative. Plaintiff's counsel promptly mailed copies of the same to Mercy and Dr. Dixson. It should be noted that prior to and during this action, the same counsel represented Decedent's husband and Plaintiff.

¶ 7 On March 23, 2005—at the beginning stages of discovery—Plaintiff filed a motion for leave to file a first amended petition to add cardiologists Drs. Scott and Nadeau as two new party-defendants. Attached to Plaintiff's motion was the proposed amended petition with the corrected style designating Plaintiff as personal representative and adding the cardiologists as party-defendants. But on April 4, 2005, Mercy and Dr. Dixson objected contending that Plaintiff should not be permitted to amend a defective petition because she was not a proper party when the lawsuit commenced. In support of Defendants' position, Dr. Dixson affixed a copy of Plaintiff's probate Petition for Appointment of Special Administrator/Representative and the probate court's Order granting Plaintiff's petition. Mercy averred to the same, ex-

---

**1.** Lawrence K. Roth previously brought a negligence action against Morrison Floral Company in Oklahoma County District Court entitled Lawrence Roth, as next of friend and surviving spouse of the deceased, *Geneva Roth v. Morrison Floral Company*, CJ–2003–4992. That action was settled prior to trial and dismissed with prejudice in November, 2004.

pressly adopting Dr. Dixson's objection in its responsive brief. On April 11, 2005, the statute of limitations expired; and on April 22, 2005, the trial court sustained Defendants' objection. Plaintiff then filed a combined motion to substitute herself as party-plaintiff and amend the petition to name additional party-defendants on April 29, 2005. On June 8, 2005, the trial court permitted Plaintiff to substitute herself as the real party in interest. Yet, the trial court refused to consider Plaintiff's motion to amend to add the cardiologists as party-defendants. It found Plaintiff "was not the proper party-plaintiff when she filed this action" and determined that Plaintiff's substitution as a real party in interest was not through inadvertent error or mistake.

¶ 8 Plaintiff filed a third motion to amend the petition on June 16, 2005, urging that Defendants concealed the identities of Drs. Scott and Nadeau. Plaintiff did not allege concealment in her first and second motions to amend. Dr. Dixson and Mercy objected to the motion asserting the statute of limitations on Plaintiff's claim had run under Okla. Stat. tit. 12, § 2015(C) (2001)—which permits an amendment to relate back to the date of the original pleading for limitations purposes. Once again, the trial court denied Plaintiff's third motion to amend. In its July 29, 2005 order, the trial court found the identities and involvement of the cardiologists were well known by Plaintiff and not concealed; thus, Plaintiff failed to meet her burden of showing good cause to add the cardiologists as party-defendants. Plaintiff's subsequent motion to reconsider was also denied.

¶ 9 Prior to trial, Dr. Dixson moved for summary judgment. He contended Plaintiff was unable to produce expert testimony on the issue of the breach of the standard of care, and thus was unable to sustain her burden of proving the necessary elements of her medical malpractice action. Dr. Dixson contends he followed the written order and dosage for Amiodarone scripted by Decedent's cardiologist. However, the trial court denied Dr. Dixson's motion. Mercy sought partial summary judgment on Plaintiff's claim that Mercy was responsible for the acts and omissions of Drs. Scott and Nadeau under the ostensible agency theory. The trial court sustained Mercy's motion for partial summary judgment.

¶ 10 The matter proceeded to jury trial. During the trial, Defendants offered the video testimony of cardiologists, Drs. Scott and Nadeau. The cardiologists testified to Decedent's medical condition, their decision to treat Decedent with Amiodarone/Cordarone, and the importance of gradually tapering down Decedent's medication to avoid a relapse in Decedent's condition. Both cardiologists expressed their conflicting views on which criteria a cardiologist should follow in administering Amiodarone/Cordarone to a patient. Additionally, the cardiologists testified about their professional relationship with Dr. Dixson and Mercy, including the procedures through which their orders and medical opinions were used in treating Decedent. The jury returned a verdict in Defendants' favor, and the trial court entered a judgment on that verdict. Plaintiff appealed. Defendants counter-appealed in the event of a reversal of the trial court's judgment.

¶ 11 On appeal, the Court of Civil Appeals held that the trial court did not abuse its discretion or err when it required Plaintiff to be properly appointed as personal representative and substituted as a party before Plaintiff's request to add additional defendants would be considered. In addition, the Court of Civil Appeals found no error or abuse of discretion in the trial court's denial of Plaintiff's subsequent motions to amend for failure to meet the section 2015(C) requirements governing an amendment to pleadings after the statute of limitations. In so holding, the court stated:

As previously observed, Plaintiff's initial motion to amend was filed when she lacked the capacity to sue on behalf of the estate. Although that first motion to amend might have been timely filed before the expiration of the statute of limitations, the timeliness of a filing by an improper party has no effect on subsequent motions to amend which were filed after the running of the statute of limitations.

After reviewing the entire record, we hold the trial court erred by overruling Plaintiff's motion to amend based on Plaintiff's failure

to first file a motion to substitute herself as the personal representative of Decedent's estate.

## II. STANDARD OF REVIEW

 ¶ 12 Whether the trial court erred in denying Plaintiff's first request to amend is a matter reviewed for abuse of discretion. While this Court acknowledges that "the trial court has always possessed discretion over whether to allow an amendment to a pleading," that discretion is not unfettered and "is limited by the provisions of [section] 2015(A)," requiring that leave to amend be freely given when justice requires. *Prough v. Edinger, Inc.,* 1993 OK 130, ¶ 8, 862 P.2d 71, 75 (citing *Cook v. Clinkenbeard,* 1974 OK 82, ¶ 13, 524 P.2d 27, 29); *Marshall v. Allstate Ins. Co.,* 1990 OK CIV APP 100, ¶ 9, 805 P.2d 689, 691. Therefore, this Court will reverse a trial court's order for abuse of discretion when judicial discretion is exercised in such a way that the end or purpose is not justified by, and is clearly against, reason and evidence. *Patel v. OMH Med. Ctr., Inc.,* 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194; *Conoco, Inc., v. Agrico Chem. Co.,* 2004 OK 83, ¶ 14, 115 P.3d 829, 834.

## III. ANALYSIS

A. Motion to Amend.

 ¶ 13 In reviewing whether the trial court properly denied Plaintiff's first request to amend, this Court will look to our well established rules governing amendments and supplemental pleadings. Section 2015(A) of the Oklahoma Rules of Civil Procedure prescribes the methods for party amendments.

Under section 2015(A), after a responsive pleading has been filed (in this case the Answer), "[a] party may amend [its petition] only by leave of court or by written consent of the adverse party...." Okla. Stat. tit. 12, § 2015(A) (2001).[2] While the decision to grant leave is within the sole discretion of the court, there must be a substantial reason to deny the motion. *Prough,* 1993 OK 130, 862 P.2d 71. Section 2015 is identical to Rule 15 of the Federal Rules of Civil Procedure, and the federal court's construction is instructive.[3] Federal Rule 15 directs "leave to amend 'shall be freely given when justice so requires." Authorities liberally construe the directive to afford plaintiffs an opportunity to test a claim on the merits. *U.S. v. Keystone Sanitation Co., Inc.,* 903 F.Supp. 803, 814 (M.D.Pa.1995); *see Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (citing 3 Moore's, Federal Practice, ¶ 15.08(2) at 15–59 (2d ed. 1980)). Further, "[i]t was never intended that justice should be or might be defeated by rejecting an amendment which, on its face, shows that justice would have been aided by permitting such amendment." *Maben v. Norvell,* 1958 OK 179, ¶ 15, 328 P.2d 425, 427–28; *see also Detwiler v. Duncan,* 1947 OK 270, 185 P.2d 200; *Rogers v. Jones,* 1944 OK 154, 147 P.2d 164; *Okmulgee Supply Corp. v. Oil Well Supply Co.,* 1934 OK 178, 30 P.2d 903; *Hunt v. Tulsa Terrazzo & Mosaic Co.,* 1932 OK 394, 11 P.2d 521; *Shade v. Miller,* 1928 OK 342, 267 P. 626. "A key consideration [in liberally permitting amendments] is whether the non-movant will be prejudiced by the amendment." *Keystone,* 903 F.Supp. at 814.

2. Okla. Stat. tit. 12, § 2015(A) states:
 A. AMENDMENTS. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty (20) days after it is served. Amendments to add omitted counterclaims or to add or drop parties may be made as a matter of course within the time specified above. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall respond to an amended pleading within the time remaining for re-

sponse to the original pleading or within ten (10) days after the service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

3. "Because "[t]he Oklahoma Pleading Code is based on the Federal Rules of Civil Procedure, ... we may look to federal authority for guidance in applying its provisions." *Prough v. Edinger, Inc.,* 1993 OK 130, ¶ 6, 862 P.2d 71, 74; *see Young v. Macy,* 2001 OK 4, ¶ 13 n. 8, 21 P.3d 44, 47. Additionally, "we may rely upon federal authorities insofar as they relate to the ... correspond[ing] [sections] of our statute." *Shores v. First City Bank Corp.,* 1984 OK 67, ¶ 5, 689 P.2d 299, 301.

¶ 14 The irregularity in Plaintiff's petition in no way prejudiced the Defendants. The record reveals that Defendants had personal knowledge of Plaintiff's perfected[4] appointment as personal representative of Decedent's estate by the probate court—and previously received a copy of the order from Plaintiff. In addition, the Defendants never challenged Plaintiff's competence to serve as personal representative of Decedent's estate. They merely averred that Plaintiff was not the proper party at the commencement of the action and that Plaintiff failed to file a formal motion to substitute herself as the proper party. Yet, Plaintiff's probate application and order of appointment as personal representative were affixed to Defendants' responsive pleadings for the trial court's consideration. Further, Plaintiff's proposed amended petition designating Plaintiff's corrected status and adding the cardiologists as new party-defendants accompanied defendant Mercy's responsive brief. The trial court should have taken judicial notice of Plaintiff's unopposed status and treated Plaintiff's request as an effective, although inept, attempt to amend her petition. *see Owens v. Taylor*, 1923 OK 103, 213 P. 300 (holding that a record, which furnished upon its face all the data for applying an amendment—even though no verbal changes were made—allowed the pleading to be read as if the change had actually been made; and plaintiff was not required to recast the petition).

¶ 15 Defendants next contend the Court of Civil Appeals properly determined that the trial court did not abuse its discretion in requiring Plaintiff's substitution as the real party in interest be achieved prior to deciding the amendment issue. In support, Defendants proffer *Weeks v. Cessna Aircraft Co.*, 1994 OK CIV APP 171, 895 P.2d 731 (approved for publication by the Supreme Court), and assert that *Weeks* allows substitution only when there is inadvertent error or mistake. We, however, are unpersuaded by Defendants' overstatement of *Weeks*, and reject the notion that there must always be a mistake in the naming of a party as a prerequisite to substitution.

¶ 16 In *Weeks*, a wrongful death action was brought by the decedent's mother. The trial court refused to substitute the administratrix (another person) as the proper party-plaintiff, and dismissed the case. The Court of Civil Appeals reversed and remanded. In so doing, the court noted that the case before it concerned more than a simple substitution of parties governed by the Oklahoma Rules of Civil Procedure section 2017,[5] acknowledging

4. The term "perfected" as used herein and defined by Black's Law Dictionary 1137 (6th Ed. 1990), means "[c]omplete; finished; executed; enforceable; without defect; merchantable; marketable. Brought to a state of perfection. As to perfect Equity; Obligation; Ownership; Title; and Usufruct, see those titles."

5. Okla. Stat. tit. 12, § 2017 states:

A. REAL PARTY IN INTEREST. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

B. CAPACITY TO SUE OR BE SUED. Except as otherwise provided by law, any person, corporation, partnership, or unincorporated association shall have capacity to sue or be sued in this state.

C. INFANTS OR INCOMPETENT PERSONS. Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

D. ASSIGNMENT AND SUBROGATION OF CLAIMS. The assignment of claims not arising out of contract is prohibited. However, nothing in this section shall be construed to affect the law in this state as relates to the transfer of claims through subrogation.

that the substitution at issue was more aptly addressed by the wrongful death statutes. *Weeks,* ¶ 9, 895 P.2d at 733.

¶ 17 The wrongful death statute confers a right of action upon the personal representative of the deceased provided that such action is commenced within two years. Okla. Stat. tit. 12, § 1053(A) (2001).[6] The realm of potential litigants is aptly addressed in section 1054. *See Weeks,* ¶ 10, 895 P.2d at 734 (citing *Weavel v. U.S. Fid. & Guar. Co.,* 1992 OK CIV APP 177, ¶ 10, 852 P.2d 783, 784). Section 1054 dictates the hierarchal structure of potential plaintiffs, permitting the "widow, or where there is no widow, . . . the next of kin of such deceased" to maintain a wrongful death action if there is no personal representative. Okla. Stat. tit. 12, § 1054 (2001).[7] However, the wrongful death act is silent concerning instances where a personal representative has been previously appointed. Because the statute does not define the term "personal representative," other statutes not inconsistent with the wrongful death act are instructive.[8]

¶ 18 Title 58, section 11, of the Oklahoma Statutes defines the term "personal representative" to include not only persons serving as executors, administrators, conservators, administrators with will annexed and guardians, but also "persons who perform substantially the same function under the law governing their status and includes a successor personal representative appointed to succeed a previously appointed personal representative." Okla. Stat. tit. 58, § 11 (2001). Thus, a personal representative appointed later in time is nonetheless the personal representative as anticipated in the wrongful death act.

Read together, sections 1053, 1054—and in the appropriate instances, section 11—properly invoke a court's jurisdiction, so long as one of the statutorily enumerated parties maintains the action.[9]

¶ 19 As the *Weeks* court correctly states, the "administrative requirements for filing a wrongful death action should [not] override the substantive right of recovery of potential beneficiaries." 1994 OK CIV APP 171, ¶ 15, 895 P.2d at 735. Being that section 1053's enactment is purely for administrative efficacy in avoiding multiplicity of suits against the same defendant and to ensure judicial economy,

> timely filing by any of the enumerated parties 'who may sue' will properly commence a wrongful death action. If [later] it transpires that the person who filed did not have the preeminent right to prosecute the action, that person should be substituted by the real party in interest, according to 12 O.S.1991 § 2017, so as to prevent multiplicity of actions.

*Id.* In finding that substitution was appropriate, the *Weeks* court reiterated various instances where substitution was permitted including the existence of mistake, inadvertent error, or even where a special administrator was previously appointed in a wrongful death action. *Id.,* ¶ 17, 895 P.2d at 735.

¶ 20 As *Weeks* pointedly notes, the language of section 2017(A) is similar to Federal Rule of Civil Procedure 17(a), and its construction is likewise informative. Like the federal courts, Oklahoma construes section 2017(A) to allow a plaintiff to substitute the

---

6. Okla. Stat. tit. 12, § 1053 (2001) states:

 A. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his or her personal representative if he or she is also deceased, if the former might have maintained an action, had he or she lived, against the latter, or his or her representative, for an injury for the same act or omission. The action must be commenced within two (2) years.

7. Okla. Stat. tit. 12, § 1054 (2001) states:

 In all cases where the residence of the party whose death has been caused as set forth in the preceding section of this article is at the time of his death in any other state or Territo-

ry, or when, being a resident of this state, no personal representative is or has been appointed, the action provided in the said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased.

8. See *Calvert v. Tulsa Pub. Schs.,* 1996 OK 106, 932 P.2d 1087 (noting where the Court imported the probate statute's definition of "personal representative" into the Government Tort Claims Act because the GTCA itself did not define the term) (superseded by statute on other grounds).

9. *See also Murg v. Barnsdall Nursing Home,* 2005 OK 74, ¶ 16 n. 6, 123 P.3d 11, 17 n. 6.

real party in interest after the statutory limitation expires, despite a non-movant's objection. *Watford v. West,* 2003 OK 84, ¶ 11, 78 P.3d 946, 948, (quoting 3A *Moore's Federal Practice,* ¶ 17.15–1 at 17–182 (2d ed. 1979)); *see also Calvert v. Tulsa Pub. Schs.,* 1996 OK 106, 932 P.2d 1087 (parents of a deceased child suing a school under the Governmental Tort Claims Act could amend their petition to reflect their perfected status as personal representative after the statute of limitations had run) (superseded by statute on other grounds). Thus, the *Weeks* court's construction of the Oklahoma wrongful death statutes in conjunction with our liberal substitution of parties under section 2017 are in accord. Clearly, to interpret *Weeks* as preventing substitution of the real party in interest absent mistake or inadvertent error is inconsistent with our current practice of liberally permitting substitution under 2017(A); specifically, its express mandate that the substitution "shall have the same effect as if the action had been commenced in the name of the real party in interest." Okla. Stat. tit. 12, § 2017(A)(2001).

¶ 21 The trial court abused its discretion when it denied Plaintiff's initial motion to amend by considering form over substance. Plaintiff's proposed amended petition which was attached to its motion established that Plaintiff was the real party in interest. The trial court, in requiring magic words for substitution, has gone too far with form over substance, especially when this Court has consistently held that amendments should be liberally permitted when the nonmoving party will not be prejudiced by the amendment. This Court will not be drawn into gamesman-

ship and deny a litigant its fair day in court based on a procedural technicality that is unfair and unwarranted.

¶ 22 The mere fact that Plaintiff failed to first file a formal motion to substitute where Defendants had full personal knowledge of Plaintiff's perfected status and submitted proof of the same, was not an exercise of judicial discretion, and is inconsistent with the spirit of the Oklahoma and Federal Pleading Codes. The substitution here was merely a formality. In no way would it alter Defendants' substantive rights. Further, a formal substitution of Plaintiff's perfected status could have occurred at any time, with the same effect as if the action had commenced in the name of the real party in interest. Therefore, Plaintiff's failure to first cure her defective petition was at best, harmless.[10]

B. Relation Back Doctrine.

¶ 23 Plaintiff next contends that the Court of Civil Appeals erred in affirming the trial court's denial of Plaintiff's second and third request to amend based on section 2015(C). Specifically, Plaintiff alleges that while Plaintiff was aware of Drs. Scott and Nadeau's identities, it was not until the beginning stages of discovery that the cardiologists' involvement "came to light." In affirming the trial court, the Court of Civil Appeals held that section 2015(C) focuses on when a plaintiff first has notice of a defendant's correct identity, not the defendant's culpability. The Court of Civil Appeals determined that based on the facts presented and Oklahoma law, Plaintiff failed to show a

10. In the instant case, the trial court's denial of Plaintiff's amendment was in direct contravention of this jurisdiction's liberal application of the Oklahoma Pleading Code and our historical practice of liberally permitting amendments to correct a mistake in a party's name, or in any other respect before and after judgement. *See Murg v. Barnsdall Nursing Home,* 2005 OK 74, 123 P.3d 11; *Stanolind Oil & Gas Co. v. Jamison,* 1950 OK 210, 227 P.2d 404 (holding the plaintiff's substitution as the real party in interest was permissible after judgment where the cause of action remained the same and the defendant was not deprived of any defenses). *See also, Reeves v. Noble,* 1923 OK 62, 212 P. 995 (affirming an amendment to substitute a plaintiff's name even after judgment where a case has been tried on its

merits and a retrial would be futile); *Owens v. Taylor,* 1923 OK 103, 213 P. 300 (holding that the plaintiff's failure to bring the suit by guardian or next friend where no actual change was made to the original petition, was an irregularity that did not affect the court's jurisdiction or substantially change the claim or defense); *Dolezal v. Bostick,* 1914 OK 82, ¶ 28, 139 P. 964, 969 (noting that a court must disregard any "error or defect in the pleadings [or proceedings] which does not affect the substantial rights of the adverse party"). We note that while the above-referenced cases are decided under statutes that predate our current statutes governing amendments, the principles and rationale behind these cases remain unchanged.

mistake as to the identities and involvement of Drs. Scott and Nadeau in Decedent's medical care prior to Plaintiff filing her petition.

¶ 24 This Court takes this opportunity to bring Oklahoma's Relation Back doctrine in accord with the United States Supreme Court's and Oklahoma's interpretation and recent application of its relation back rule. As written, Section 2015(C) permits an amendment to relate back to the date of the original pleading when:

1. Relation back is permitted by the law that provides the statute of limitations applicable to the action; or

2. The claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; or

3. The amendment changes the party or the naming of the party against whom a claim is asserted if paragraph 2 of this subsection is satisfied and, within the period provided by subsection I of Section 2004 of this title for service of the summons and petition, the party to be brought in by amendment:

a. has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and

b. knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. An amendment to add an omitted counterclaim does not relate back to the date of the original answer.

. . . .

¶ 25 This Court has previously aligned Oklahoma's relation back doctrine with Rule 15(C) of the Federal Rules of Civil Procedure, which provides that:

(c) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and

complaint, the party to be brought in by amendment: . . . (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Rule 15(c)(1)(C).

¶ 26 The Court of Civil Appeals affirmed the trial court's determination that Plaintiff either knew or should have known the cardiologists' identities and involvement; thus finding Plaintiff failed to meet her burden of showing good cause to add the cardiologists as defendants. By focusing on Plaintiff's knowledge, the trial court erred in analyzing the section 2015(C) requirements. The dispositive question under section 2015(C)(2) is not whether Plaintiff knew or should have known the identity of the cardiologists as the proper defendants, but whether the cardiologists knew or should have known they would have been named as defendants, but for error. Section 2015(C)(2) asks what the prospective defendant knew or should have known during the time for service period, not what the plaintiff knew or should have known at the time of filing the original petition.[11] *See Pan v. Bane,* 2006 OK 57, ¶ 6, 141 P.3d 555, 558; *see also* Okla. Stat. tit. 12, § 2015(C)(3)(b).

¶ 27 This analysis was recently implemented by the United States Supreme Court in *Krupski v. Costa Crociere,* —— U.S. ——, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010). In *Krupski,* a former patron filed suit against Costa Cruise to recover for personal injuries she sustained while aboard its cruise ship. The front of passenger's ticket listed Costa Cruise's Florida address. The ticket clearly stated that the passenger ticket was the sole contract between each passenger and the carrier, identified as "Costa Crociere S. p. A., an Italian corporation." After the statutory limitations period expired, Costa Cruise brought Costa Crociere's existence to passenger's attention on three occasions, including in its motion for summary judgment, in which it stated Costa Crociere was the proper defendant. At that time, the passenger successfully sought leave to amend her peti-

11. It should be noted that the Court of Civil Appeals' analysis of the relation back doctrine predates the United States Supreme Court's recent ruling in *Krupski v. Costa Crociere,* —— U.S. ——, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010), discussed below.

tion to add Costa Crociere as a defendant. The trial court dismissed Costa Cruise from the case and Costa Crociere (represented by the same counsel) moved to dismiss, contending that the amended petition did not satisfy the requirements of Rule 15(c) of the Federal Rules of Civil Procedure, which govern when an amended pleading "relates back" to the date of a timely filed original pleading. The district court ruled in favor of Costa Crociere finding that passenger was not mistaken about the proper party's identity because Costa Cruise disclosed Costa Crociere's role in multiple filings and passenger, nonetheless, delayed for months in amending her petition. The Eleventh Circuit affirmed, further holding that passenger chose to sue one potential party over another, and that relation back was appropriately denied based on passenger's undue delay.

¶ 28 In reversing the Eleventh Circuit, the United States Supreme Court held that whether a pleading relates back depends on what the party to be added knew or should have known, not on the amending party's knowledge or timeliness in seeking to amend the pleading. *Id.* at 2493. The rule clearly sets forth an exclusive list of requirements for relation back—plaintiff's diligence is not among them. *Id.* at 2496. Moreover, the rule mandates relation back once its requirements are satisfied, and does not leave the decision to the district court's equitable discretion, like that found in Rule 15(a).[12] *Id.* Further, passenger's knowledge of the ticket's contents did not "foreclose the possibility that she nonetheless misunderstood crucial facts regarding the two companies' identities." *Id.* at 2497.

¶ 29 The Court further explained, "a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the 'conduct, transaction, or occurrence' giving rise to her claim." *Id.* at 2494. The protections afforded defendants in applying the statute of limitations must be balanced with the rule's ex-

pressed preference of resolving disputes on their merits. *Id.* "[R]epose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity," or misunderstood the potential defendant's "status or role in the events giving rise to the claim at issue." *Id.* Therefore, a defendant's interest in repose is not supported by a plaintiff's mere knowledge of that defendant's identity. *Id.*

¶ 30 In considering the record before us, we find the trial court erred in its analysis and application of section 2015(C).

C. Summary Judgment.

¶ 31 Finally, Plaintiff asserts the trial court erred when granting Mercy's motion for partial summary judgment regarding Mercy's responsibility, under the ostensible agency theory, for Drs. Scott and Nadeau's acts and/or omissions. This Court will review a trial court's grant of summary judgment de novo. *Hoyt v. Paul R. Miller, M.D., Inc.*, 1996 OK 80, ¶ 2, 921 P.2d 350, 351–52. Summary judgment is proper only when the evidentiary materials "establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Shelley v. Kiwash Elec. Co-op., Inc.*, 1996 OK 44, ¶ 15, 914 P.2d 669, 674. Upon reviewing a trial court's grant of summary judgment, all available evidence is viewed in the light most favorable to the non-moving party. *Id.*

¶ 32 While Oklahoma does not ordinarily extend the doctrine of respondeat superior to a hospital where its doctor renders an independent medical opinion and is an independent contractor, *Van Cleave v. Irby*, 1951 OK 182, 233 P.2d 963, under the ostensible agency theory, a hospital may not deny responsibility for the negligent acts of its agents solely because agent doctors are

---

12. Contrast the trial court's authority in Rule 15(a) with that in Rule 15(c). Rule 15(a) prescribes the method of amending pleadings prior to trial. The rule expressly grants a trial court *discretion* in deciding whether to allow the amendment and permits the trial court to consid-

er the moving party's "undue delay" or "dilatory motive." *Id.* at 2496. Rule 15(c), on the other hand, *mandates* the amendments when the moving party successfully demonstrates all of the enumerated requirements. *Id.*

independent contractors. *Weldon*, 1985 OK 94, ¶ 4, 709 P.2d at 1059–60. To determine whether a doctor was a hospital's ostensible agent, the Court considers whether the patient, at the time of admittance, looks to the hospital solely for treatment of his or her physical ailments, with no belief that the physicians were acting on their own behalf rather than as agents of the hospital. *Smith v. St. Francis Hosp.*, 1983 OK CIV APP 58, ¶ 12, 676 P.2d 279, 282. The Court may also consider whether there was a pre-existing relationship between the plaintiff and the treating physicians. *Id.*, ¶ 13, 676 P.2d at 282–83. Additionally, the Court may consider whether the hospital pays the doctor a salary or bills for the doctor's services. *Weldon*, 1985 OK 94, ¶ 6, 709 P.2d at 1060. Finally, because issues of agency are generally questions of fact, resolution through summary adjudication is disfavored. *Reed v. Anderson*, 1927 OK 334, ¶ 4, 259 P. 855, 856.

¶ 33 This case illustrates how the issue of ostensible agency is one of fact, and not generally appropriate for resolution through summary judgment. Dr. Dixson arranged Decedent's consultation with Drs. Scott and Nadeau during her admittance to Advance Care Hospital, a subsidiary of Mercy Health System. Plaintiff submits that on March 1, 2003, Decedent looked to Mercy to provide care at the time of her admittance. Plaintiff further argues Decedent reasonably believed Drs. Scott and Nadeau were acting on Mercy's behalf. Specifically, Plaintiff contends Decedent did not have a prior relationship with the cardiologists, to whom Dr. Dixson referred her for further care. Mercy argues that the preexisting relationship began when the cardiologists were initially consulted to install a pacemaker in Decedent, and prescribed Betapace in February of 2003; and that relationship predated the transaction or occurrence at issue. Therefore, Mercy contends Decedent returned to Mercy as a situs to continue her prior relationship with Drs. Scott and Nadeau.

¶ 34 This Court does not today decide whether ostensible agency exists in the context of a physician to physician consult. Viewing the facts in a light most favorable to the non-moving party, there remains a material issue of fact as to whether Decedent looked to Mercy to provide medical care, or as a situs to be treated by Drs. Scott and Nadeau. Summary judgment was therefore inappropriate.

## IV. CONCLUSION

¶ 35 The dispositive issue in this appeal is whether the trial court erred when it denied Plaintiff's timely request to amend an otherwise defective petition because Plaintiff failed to first file a motion to substitute herself as the personal representative of Decedent's estate. Finding that the trial court abused its discretion, we answer in the affirmative. Having so held, this Court declines to address Plaintiff's other allegations of error. Accordingly, the decision of the Court of Civil Appeals is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; TRIAL COURT JUDGMENT VACATED; CAUSE REMANDED.

CONCUR: COLBERT, V.C.J.; WATT, EDMONDSON, REIF, COMBS, JJ.

DISSENT: TAYLOR, C.J.; WINCHESTER, J.

NOT PARTICIPATING: KAUGER, J.